

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2001

# In Re: Unisys Corp.

Precedential or Non-Precedential:

Docket 99-1929

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re: Unisys Corp." (2001). *2001 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-1929

IN RE: UNISYS CORP. RETIREE
MEDICAL BENEFIT "ERISA" LITIGATION

FREDERICK E. TONNIES; WILLIAM M. LEONHARDT;
DAVID S. KAHL; ROBERT E. WILT; CLAY A. BERNICHON;
SOLVEIG TSCHANN; FREDERICK W. HORPE; LUDSON F.
WORSHAM; EDWIN MARJALA; KENYON T. BEMENT;
DONALD E. WAGNER; LUCIUS O. BROWNE, DONALD F .
FABRY; THOMAS L. DURKIN; BERNARD J. HAR T;
RONALD R. BENNETT; HERMAN HEIN; DONALD L.
THOMPSON, individually and on behalf of all members of
the Sperry, Burroughs and Unisys Classes

Appellants

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(MDL 969)
District Judge: Honorable Bruce W. Kauf fman

Argued July 18, 2000

BEFORE: MANSMANN, NYGAARD and STAPLETON,
Circuit Judges

(Opinion Filed March 9, 2001)

Arnold Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Joseph A. Golden
Carl B. Downing
Sommers, Schwartz, Silver &
 Schwartz
2000 Town Center, Suite 900
Southfield, MI 48075

Bryan L. Clobes
Miller, Faucher, Cafferty & W exler
One Penn Square West, Suite 2500
Philadelphia, PA 19102

Seymour J. Mansfield
Mansfield & Tanick
900 Second Avenue South,
 Suite 1560
Minneapolis, MN 55402

Sarah E. Siskind
Miner, Barnhill & Galland
44 East Miffline Street, Suite 803
Madison, WI 53703

Henry H. Rossbacher
Rossbacher & Associates
445 South Flower Street
Citibank Center, Suite 2100
Los Angeles, CA 90071

Charles Gottlieb
Gottlieb & Goren
30150 Telegraph, Suite 249
Bingham Farms, MI 48025

Joseph F. Roda
Roda & Nast
801 Estelle Drive
Lancaster, PA 17602

Alan M. Sandals (Argued)
Sandals, Langer & Taylor
1650 Market Street
One Liberty Place, 50th Floor
Philadelphia, PA 19103

    Attorneys for Appellants

Joseph J. Costello (Argued)
Joseph B.G. Fay
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Joseph A. Teklits
UNISYS Corporation
P.O. Box 500
Blue Bell, PA 19424

    Attorneys for Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

We are asked to review two or ders granting partial summary judgment to the defendant in this ERISA action. Review of one order requires us to interpret ERISA's statute of limitations for breach of fiduciary duty claims, 29 U.S.C. S 1113. Review of the other requir es us to determine whether the defendant fiduciary, if found to have made material misrepresentations to the plaintiffs, may be held accountable to those plaintiffs who relied to their detriment in making decisions other than decisions to r etire.

I.

The factual and procedural history of this case is extensive and has been recounted elsewher e in detail.1 We
_____

1. See e.g., In re Unisys Corp., 57 F.3d 1255, 1257–61 (3d Cir. 1995), cert.
denied sub nom, Unisys v. Pickering, 517 U.S. 1103 (1996); In re Unisys Corp., 957 F. Supp. 628, 631–32 (E.D. Pa. 1997); In re Unisys Corp., 837 F. Supp. 670, 672 (E.D. Pa. 1993), aff 'd, 58 F.3d 896 (3d Cir. 1995).

3

will explain only the status of the case as it comes to us on this appeal. This is a class action filed on behalf of retirees and disabled former employees of the Sperry, Burroughs, and Unisys Corporations ("retirees" or "plaintiffs") against Unisys Corporation ("Unisys"). The dispute arises out of Unisys' termination of its post-retirement medical plans for retirees and disabled former employees of the three companies.

On November 3, 1992, Unisys announced that it would terminate all of its preexisting medical benefit plans and replace them with a new one effective January 1, 1993.[2] Under the majority of the old plans, Unisys paid the entire medical premium for the lives of the retirees and provided continuing benefits for their spouses. The new plan, in contrast, required the retirees to contribute escalating amounts to the cost of the premiums until January 1, 1995, at which time the retirees would become responsible for the entire premium.

Upon learning about this planned change in retirement benefits, retirees of Sperry, Burroughs, and Unisys separately filed eight different lawsuits against Unisys in four jurisdictions. See In re Unisys Corp., 837 F. Supp. 670, 672 n.1 (E.D. Pa. 1993) (citing cases). These lawsuits were eventually consolidated. The retirees asserted three causes of action: breach of contract, estoppel, and breach of fiduciary duty.

The District Court granted summary judgment to Unisys on the breach of contract claims of the Burroughs and Unisys retirees, as well as on the estoppel and breach of fiduciary duty claims of all plaintiffs. See In re Unisys Corp., 837 F. Supp. 670 (E.D. Pa. 1993). After a non-jury trial, the District Court granted judgment to Unisys on the contract

_____

2. In September 1986, Sperry Corporation and Burroughs Corporation merged to form Unisys Corporation. Following the merger, Unisys maintained the preexisting medical benefit plans of its component corporations until 1989. That year, Unisys created its own Post-Retirement and Extended Disability Medical Plan to cover employees who retired after April 1, 1989, most of whom were former Sperry and Burroughs employees. Even with the addition of the new plan, however, Unisys kept its predecessor plans intact.

4

claims of the Sperry retirees. See In re Unisys Corp., 1994 WL 284079 (E.D. Pa.).

During the trial, Unisys relied upon the fact that the applicable ERISA plans and summary plan descriptions ("SPDs") contained a reservation of rights clause, reserving to Unisys the right to amend or terminate the plan at any time for any reason. The Sperry retirees advanced two theories in response. The first was that, when the applicable ERISA plans and summary plan descriptions described the health care benefits as "lifetime" benefits, this was intended to convey not only that the existing plan provided such benefits for life but also that those benefits were vested, i.e., guaranteed against change. The second theory "was that although the SPDs used lifetime language to describe the benefits of [both] actives and retirees, Sperry had an unwritten `practice' or `policy' that once an individual retired, his/her benefits`locked in.' Pursuant to this `lock in' policy, the company could not r educe the medical benefits of retirees under any circumstances." In re Unisys Corp., 1994 WL 284079 at *23.

At the seven day trial, the District Court admitted and considered extrinsic evidence tendered to show Unisys' intent in promulgating the plans. The Court concluded that "lifetime benefits" as used in the plans and SPDs did not reflect an intent to create "vested" lifetime benefits, observing that "the plaintiffs conceded thr oughout the entire trial that an active employee's benefits could always be awarded or terminated even though lifetime language was similarly used to describe that benefit . . . implicitly recogniz[ing] that lifetime is not synonymous with vested." Id. at *22. With respect to the plaintiffs' second theory, the District Court found no evidence of a corporate practice or policy of "locking-in" benefits at r etirement, noting that "not a single document corroborat[ed] the testimony that an active/retiree distinction was in for ce." Id. at *23.

The District Court's ultimate conclusion at the end of the trial was that the plaintiffs lacked any contract right to lifetime benefits. The evidence that it hear d and our intervening decision in Bixler v. Cent. Pa. T eamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1993), however, caused it to reconsider its summary judgment in Unisys'

5

favor on the Sperry plaintiffs' breach of fiduciary duty claims. Ultimately, it reinstated those claims. 3 In the course of doing so, it pointed to evidence that (1) a "r etirement counselor [had] responded to questions about the reservation of rights clause raised by potential retirees by saying that the language `pertained to active employees and not to retirees' ", and (2) a "personnel manager . . . admitted to routinely telling inquiring employees that their post-retirement medical benefits were`guaranteed to them for life.' " The Court described this evidence as"just a small sample of the evidence on this issue." In r e Unisys Corp., 1994 WL 284079 at *34 n.69. The Court also r eferenced evidence indicating "the highest levels of corporate management at Sperry, and later Unisys, recognized that employees might be under the mistaken belief that`lifetime' meant forever." Id. at *26. The Court explained its reinstatement decision by stating "that based on [this] evidence and the law in this circuit, it seems possible that at least some plaintiffs will be able to sustain a [breach of fiduciary duty] claim." Id. at *27. 4 The Court declined, however, to reinstate the estoppel claims.

An interlocutory appeal followed, bringing befor e us the judgments in Unisys' favor on the contract and estoppel claims and the decision to reinstate the br each of fiduciary duty claims. We found judgment appropriate on the breach of contract claim because the plans and SPDs pr ovided unambiguous notice that lifetime medical benefits were not guaranteed, even for those who retired when the plans still provided for such benefits. On the unambiguous face of the plans, there was no right to lifetime medical benefits and extrinsic evidence should not be considered. See In re Unisys Corp. ("Unisys I"), 58 F .3d 896, 904–06 (3d Cir. 1995).

We found that summary judgment was appr opriate on the retirees' estoppel claim as well:

_____

3. After we affirmed this decision, the District Court reinstated the similar claims of the Burroughs and Unisys r etirees as well. In re Unisys Corp., 1996 WL 455968 (E.D. Pa.).

4. At the same time, the Court stressed that the breach of fiduciary duty claim was not before it and that it was "not holding that a breach did in fact occur." Id. at *27.

Due to the unambiguous reservation of rights clauses in the summary plan descriptions by which Unisys could terminate its retiree medical benefit plans, the regular retirees cannot establish"reasonable" detrimental reliance based on an interpr etation that the SPDs promised vested benefits. The r etirees' interpretation of the plans as providing lifetime benefits is not reasonable as a matter of law because it cannot be reconciled with the unqualified reservation of rights clauses in the plans.

Unisys I, 58 F.3d at 907.

In a separate opinion, we also upheld the District Court's reinstatement decision. See In re Unisys Corp. ("Unisys II"), 57 F.3d 1255 (3d Cir. 1995). W e did so because the record suggested that some retirees might be able to show one or both of the following: (1) Unisys representatives counseled them that they had lifetime medical benefits without making reference to the reservation of rights clause, even though the representatives were awar e that many employees mistakenly understood such counsel to mean that such benefits became vested at the time of r etirement, see id. at 1260–61; and (2) Unisys repr esentatives "affirmatively represent[ed] to them that their medical benefits were guaranteed once they retir ed, when the company knew in fact this was not true." Id.  at 1266–67. We held that such conduct could constitute a breach of Unisys' fiduciary duty as plan administrator .

After the breach of fiduciary duty claim was reinstated for all classes of plaintiffs, Unisys filed two motions for partial summary judgment. At the same time, the Sperry r etirees submitted a motion for summary judgment on their claims. In its first motion, Unisys asked the District Court to grant it summary judgment against all Sperry retir ees who retired before November 17, 1986 (six years befor e the first complaint by Sperry retirees was filed), and against all Burroughs retirees who retir ed before December 3, 1986 (six years before the first complaint by Burr oughs retirees was filed). Unisys argued that these plaintiffs were barred from having their claims heard by ERISA's statute of limitations, 29 U.S.C. S 1113.

In its second motion, Unisys sought to have the District Court grant summary judgment against all the plaintiffs who would not be able to prove that Unisys' alleged breach of fiduciary duty led them to retire earlier than they otherwise would have (e.g., retirees who did not voluntarily retire). It argued that the only legally cognizable harm that could have resulted from its alleged misr epresentations was acceleration in individual decisions to retir e. Other decisions made by the plaintiffs in reliance on Unisys' misrepresentations, Unisys contended, should not be considered a "resulting harm" of the alleged breach of fiduciary duty.

In support of their summary judgment motion, the Sperry retirees argued that ther e is no material dispute of fact as to any of the elements of their breach of fiduciary duty claims. Accordingly, they urged the District Court to grant them judgment as a matter of law.

The District Court granted Unisys' motions for partial summary judgment and denied summary judgment to the Sperry retirees on their motion. Those r etirees whose claims were extinguished by the partial summary judgments in Unisys' favor then successfully moved under Fed. R. Civ. P. 54(b) for the entry of a final judgment on their claims so they could prosecute this appeal. See In r e Unisys Corp., 189 F.R.D. 149 (E.D. Pa. 1999).

II.

Section 1113 of ERISA, 29 U.S.C. S 1113 states, in its entirety:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
>
> (1) six years after (A) the date of the last action which constituted part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

8

(2) three years after the earliest date on which the plaintiff had actual knowledge of the br each or violation;

except that in the case of fraud or concealment, such actions may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. S 1113.

The retirees argue that the District Court misapplied S 1113 in two respects. First, they ar gue that the Court erred in refusing to hold that under the"fraud or concealment" provision, the limitations period did not end until six years after they discovered the truth about their health care benefits. In the alternative, the retirees argue that even if we find the "fraud or concealment" provision inapplicable here, their claims are nevertheless timely under the six-year provision provided inS 1113(1)(A), which does not begin to run until "the date of the last action which constituted a part of the breach or violation." The retirees contend that the date of the last action constituting part of the breach in this case was the date on which Unisys terminated the old benefit plans.

A. "Fraud or Concealment"

The purpose of the "fraud or concealment" pr ovision is to codify a portion of the common law for ERISA br each of fiduciary duty claims. The issue raised by this pr ovision is not simply whether the alleged breach involved some kind of fraud but rather whether the fiduciary took steps to hide its breach so that the statute should not begin to run until the breach is discovered. As we explained in Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir. 1996):

We now join our sister courts and hold thatS [1113]'s "fraud and [sic] concealment" language applies the federal common law discovery rule to ERISA br each of fiduciary duty claims. In other words, when a lawsuit has been delayed because the defendant itself has taken steps to hide its breach of fiduciary duty, . . . the limitations period will run six years after the date of the claim's discovery. The relevant question is therefore

9

> not whether the complaint "sounds in concealment,"
> but rather whether there is evidence that the defendant
> took affirmative steps to hide its br each of fiduciary
> duty.

Id. at 1552.

In Kurz, the alleged breach of fiduciary duty was the counseling of employees considering retir ement about their retirement benefits without revealing that plan amendments to increase those benefits wer e under serious consideration. Because the "wrong . . . was neither self-concealing nor actively concealed," we expr essly reserved the issue, elsewhere debated, of "whetherS [1113]'s six year period extends to both `self-concealing' wr ongs as well as `active concealment' separate from the underlying wrongdoing." Id. at 1552. In this context, "a self-concealing act is an act committed during the course of the original fraud that has the effect of concealing the fraud from its victims, [while a]ctive concealment refers to acts intended to conceal the original fraud that are distinct from the original fraud." Wolin v. Smith Bar ney, Inc., 83 F.3d 847, 852 (7th Cir. 1996). We held in Kurz that, regardless of whether the acts to conceal the breach occur in the course of the conduct that constitutes the underlying br each or independent of and subsequent to the breach, there must be conduct beyond the breach itself that has the effect of concealing the breach from its victims.

Here, as in Kurz, the issue is "not whether the complaint `sounds in concealment' [i.e., not whether Unisys misadvised the retirees or counseled them without drawing attention to the reservation of rights clause], but rather whether there is evidence that the defendant took affirmative steps [at any point] to hide its breach of fiduciary duty." Id. at 1552 (emphasis added). Accordingly, if all that a plaintiff can show is that a counselor represented to him that he had guaranteed lifetime health care benefits or failed to give him accurate advice knowing that he believed he had such benefits, the fraud or concealment clause is inapplicable. In such cases, Unisys cannot be said to have taken affirmative steps, either as a part of the original breach of duty or ther eafter, to cover up its breach. To the contrary, pursuant to the relevant

10

provisions of ERISA, Unisys regularly distributed to its
employees and retirees SPDs unambiguously explaining
that the plan provisions calling for lifetime benefits could be
amended at any time for any reason. As the District Court
aptly put it,

> While . . . compliance with SPD disclosure obligations
> does not relieve a company of its fiduciary duty to
> avoid confusing participants about their benefits, this
> court will not hold that the truth about the "lifetime"
> benefits was concealed from participants when the
> information about the reservation of rights clause was
> unambiguously printed and distributed [by the
> company] in the SPD.

In re Unisys Corp., 957 F. Supp. at 635. Accordingly, we
hold that the "fraud or concealment" pr ovision of S 1113(2)
is inapplicable to such cases.5

It is true, as retirees stress, that the doctrine of equitable
tolling can under some circumstances pr event a limitations
period from running in favor of a trustee on a breach of
fiduciary duty claim even in the absence of concealment on
his part. Bailey v. Glover, 21 Wall 342 (1875), upon which
plaintiffs heavily rely, provides one example of such
circumstances. We conclude, however , that superimposing
such equitable tolling rules on the statutory limitations
scheme set forth in S 1113 would be inconsistent with
congressional intent and the clear teachings of the
Supreme Court.

In Lampf, Pleva, Lipkind, Prupis & Petigr ow v. Gilbertson,
501 U.S. 350, 360–62 (1991), the Court held that Rule
10(b)(5) misrepresentation claims ar e governed by S 9(e) and
S 18(c) of the Securities and Exchange Act, each of which
requires that suit be filed befor e the earlier of (a) one year
from the discovery of the facts constituting the violation or
(b) three years from "the violation" (or, in the case of S 18(c),
from the date "the cause of action accrued"). The plaintiff

_____

5. Notwithstanding plaintiffs' argument to the contrary, we do not regard
the fact that the alleged misrepresentations were repeated (as opposed to
isolated) as satisfying the requirement that there be affirmative steps to
conceal beyond the misrepresentations themselves.

there argued that the doctrine of equitable tolling should apply so that the three-year limitations period would not start to run until the fraud was discovered even where no steps where taken by the defendant to conceal the fraud. The Court rejected that argument, finding it fundamentally at odds with the legislative scheme:

> Plaintiff-respondents note, correctly, that "[t]ime requirements in lawsuits . . . are customarily subject to `equitable tolling.' " Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990), citing Hallstrom v. Tillamook County, 493 U.S. 20, 27 (1989). Thus, this Court has said that in the usual case, "wher e the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." Bailey v. Glover, 21 Wall. 342, 348 (1875); see also Holmberg v. Armbr echt, 327 U.S. 392, 396-397 (1946). Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure.
>
> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling. One commentator explains: "[T]he inclusion of the thr ee-year period can have no significance in this context other than to impose an outside limit." . . . Because the purpose of the 3-year limitation is clearly to serve as a cutof f, we hold that tolling principles do not apply to that period.

Id. at 363.

Although the specified duration of the limitations periods here is different, the legislative scheme is the same. Congress has determined that the cut-of f date should be the earlier of (a) three years from the date of discovery of the claim and (b) six years from the violation. The only difference is that ERISA's statute makes a single express

12

exception for cases of "fraud or concealment." Just as in Lampf, it would be fundamentally inconsistent with the statutory scheme here to accept the argument that the six-year period does not begin to run until discovery of the fraud, where the defendant has engaged in no wr ongful activity beyond the original fraud on which the plaintiffs' claims are based. Indeed, given the fact that Congress provided one express exception in S 1113(2), rejection of equitable tolling here follows a fortiori  from the Supreme Court's holding in Lampf.

Similarly, we must decline plaintiffs' invitation to apply their equitable tolling principles under the guise of construing S 1113(2)'s "fraud or concealment" provision. Accepting that invitation would require us to reject Kurz, and we are bound by that precedent. Contrary to plaintiffs' suggestion, we do not read our subsequent case law as diluting the significance of Kurz in the context of this case.6

This does not end the matter, however . Unlike the District Court, we are unwilling to say based on the current record that no retiree will be able to successfully invoke the "fraud or concealment" provision of S 1113(2). As we have noted, the District Court, when deciding to reinstate the breach of fiduciary duty claims, pointed to evidence suggesting that a "retirement counselor [had] r esponded to questions about the reservation of rights clause raised by potential retirees by saying that the language pertained to active employees and not to retirees." In re Unisys Corp., 1994 WL 284079 at *34 n.69. It seems to us entirely possible that advice of this character might well bring the fraud or concealment provision into play. If, for example, advice about the

_____

6. In particular, plaintiffs point to this Court's decision in Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000). As we expressly noted, no statute of limitations issue was befor e us in that appeal. Although a footnote in that case makes refer ence to "issues left unresolved in Kurz about the anatomy and scope of the fraudulent concealment doctrine," i.e., whether ERISA's statute of limitations applies to "self-concealing" as well as "active concealment" cases, id. at 494 n.5 (full citations and internal quotations omitted), we do not read Adams as purporting to second guess the Kurz  rule that the "fraud or concealment" provision requires"affirmative steps to hide [the] breach of fiduciary duty." Kurz, 96 F.3d at 1552.

13

reservation of rights clause was given under circumstances such that an employee, who had consulted the SPD, was dissuaded from consulting counsel regar ding that clause, we believe that the advice could appropriately be regarded as an affirmative step having the ef fect of concealing Unisys' breach.

It would be inappropriate for us to decide at this stage whether "fraud or concealment" within the meaning of section 1113(2) has occurred in this case. W e hold only that, drawing all permissible inferences against the party seeking summary judgment, there may be r etirees who will be able to prove that Unisys counselors concealed their breach from them and that the limitation period did not foreclose suit until six years after the date they discovered the breach had occurred.

B. "Date of the last action which constituted part of the breach"

Having concluded that the six-year limitations period is applicable to plaintiffs' claims, we must determine when that period began to run, i.e., "the date of the last action which constituted a part of the breach." Unisys insists that this text focuses on the last action of the fiduciary which was in violation of its fiduciary duty. While it does not maintain that the current record pinpoints the date upon which the last alleged misrepresentation was made, it correctly points out that insofar as decisions to retire are concerned, a retiree's date of r etirement is necessarily the last date upon which Unisys could have made a r elevant misrepresentation or upon which a clarifying communication could have prevented detrimental reliance. Unisys therefore asks us to affir m the District Court's grant of summary judgment against those members of the plaintiffs' class who retired mor e than six years before the date on which their case was originally filed, in 1992.

The retirees, on the other hand, contend that the date of the last action which constituted part of the br each was November 3, 1992, the date on which Unisys announced the termination of its "lifetime" plans. They argue that S 1113 must be interpreted in this manner because no

14

actual harm occurred and thus no legitimate claim of breach of fiduciary duty arose until Unisys terminated the plans that it initially had misrepresented. Even though the retirees concede that the termination of the old plans was a non-fiduciary act, they nevertheless insist that a non-fiduciary act can constitute "part of the br each or violation" of fiduciary duty if it is the final act that gives rise to a cause of action.

In Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000), this Court recently reviewed the elements of a breach of fiduciary duty claim like that of the plaintiffs here. We found the controlling pr ecepts in our prior decision in this case:

>  An employee may recover for a breach of fiduciary duty if he or she proves that an employer , acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted ther eupon to his or her detriment.

Id. at 492, citing Unisys II, 57 F .3d at 1264.

Given these elements of a claim for breach offiduciary duty in this context, it necessarily follows that any breach that may have occurred was completed, and a claim based thereon accrued, no later than the date upon which the employee relied to his detriment on the misr epresentations. Surely, any employee who sought counsel and who took early retirement based on Unisys' expr ess assurance that she possessed guaranteed lifetime health car e, thereby reducing the amount of pension she would otherwise receive, could bring suit immediately and secur e rescission of her retirement or some other appr opriate equitable relief.7

_____

7. The dissenting opinion assumes that an employee misled by Unisys about guaranteed life care benefits would be entitled to a remedy taking into account his or her expectancy interest in such benefits rather than, or perhaps in addition to, the economic loss suffered when he changed position in detrimental reliance on Unisys' conduct. The District Court has not yet addressed what remedies may be available to a retiree who establishes a breach of fiduciary duty, and we, of course, express no opinion on the availability of expectancy compensation or any other form

15

Accordingly, it seems clear to us that the six-year period for such plaintiffs commenced no later than the r espective dates of their retirements.8

We therefore agree with the District Court that the denial of free health care coverage was not an element of the plaintiffs' claim. As the District Court pointed out, the alleged breach of fiduciary duty here concerned the counsel allegedly given or not given, and there is no causal nexus between that counsel and the denial of free health care coverage. In re Unisys Corp., 957 F . Supp. at 639. If Unisys had provided clear and accurate counsel, some r etirements may not have occurred when they did, but ther e is no reason to believe retirees would now have free coverage. As the District Court held, Unisys had a right to ter minate free

_____

of relief. We do note, however, that there is a material difference between
the value of a health care plan with guaranteed lifetime benefits and the value of a health care plan with benefits that can be canceled at any time for any reason. Accordingly, if an employee were entitled to an expectancy remedy as a result of r etiring after being told he had the former, when in fact he had the latter , he would be entitled to bring suit
immediately for the difference between the value he was promised and the value he received or for specific per formance of the promise to provide a plan or policy with guaranteed lifetime health care. The dissent is correct, however, that a retir ee who chose not to bring a suit for guaranteed lifetime benefits or the value ther eof, and who died before any change in the plan, would serendipitously have wound up in the same position he would have been in had the misr epresentation been true. Accordingly, his estate would have no claim based on lost health care benefits.

8. If the "date of the last action which constitutes a part of the breach" is the date of Unisys' last misrepresentation, it is theoretically possible
that the statute could begin to run before a r etiree could seek relief from
a court since detrimental reliance is a necessary element of a breach of fiduciary duty of this kind. We need not decide, however, whether the six year period can begin to run before a br each of fiduciary duty claim accrues. As we have noted, the District Court and the parties have regarded the date of the last relevant misrepresentations and the date of detrimental reliance as being the same date and the only issue briefed is whether that date or the date of the denial of fr ee health care coverage
is the legally relevant date. Accordingly, we hold only that the statute began to run no later than the date of alleged detrimental reliance.

16

health care coverage, and it exercised that right in a non-fiduciary capacity. Id. at 638.9

It is not clear to us, however, that the claims of all Sperry retirees who retired befor e November 17, 1986, and all Burroughs retirees who retir ed before December 3, 1986, are barred. While the primary theory of liability being asserted here is clearly that many relied on the misrepresentations to their detriment by deciding to take voluntary retirement, as we explain her eafter, Unisys has not persuaded us that this is the only viable theory of liability. It may well be that retirees who retired before those dates relied to their detriment in making other decisions after those dates. Accordingly, the summary judgment entered by the District Court was overbroad and must be reversed. Summary judgment for Unisys would be appropriate, however, with respect to those who assert claims based solely on retirement decisions made more than six years before suit was filed.

III.

Unisys argues that an essential element of the breach of fiduciary duty claim recognized in our prior opinion is a voluntary decision to retire made in r eliance on a mistaken view that health care benefits were guaranteed for life. It necessarily follows, according to Unisys, that it is entitled to summary judgment with respect to anyone who was mandatorily retired at age 65, left the company's employ involuntarily because of disability, or for some other reason made no such decision.

In response, the plaintiffs insist that the category of claims we earlier recognized is not limited to claims based on retirement decisions and have submitted affidavits from members of the class who allege that, in reliance on their

_____

9. It is only fortuitous that the fiduciary who did the alleged counseling here was the employer who exercised its right to change the plans. If Unisys had not been the administrator of the plans and an independent administrator had breached its fiduciary duty by miscounseling retirees, it would be even more clear that the plan admendments were not "the last action which constituted a part of the br each."

17

belief that they had guaranteed lifetime benefits, they declined other employment opportunities, chose to forego the opportunity to purchase supplemental health insurance, or made other important financial decisions for their retirement.

The District Court agreed with Unisys and granted summary judgment against all who would be unable to prove a voluntary decision to retire. We perceive no principled basis, however, for so cabining our holding in Unisys II. After all, in Bixler, upon which we heavily relied there, the decision resulting from the breach of fiduciary duty was a decision on whether to purchase COBRA insurance rather than a decision regarding retirement. See Bixler, 12 F.3d at 1301–03; see also Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 237–39 (3d Cir. 1994) (fiduciary's misrepresentations about a new life insurance plan caused plaintiff to fail to obtain adequate coverage). It is, of course, not clear that the plaintiffs who rely upon these affidavits will be able to establish their entitlement to relief, but we decline Unisys' invitation to adopt an across the board prohibition of relief based upon reasonable reliance in contexts other than retirement decisions.

Understanding the import of our decision in Unisys II requires a recognition of the procedural posture in which that appeal arose. As we have noted, the District Court initially granted summary judgment to Unisys on the breach of fiduciary duty claim. See In re Unisys Corp., 837 F. Supp. at 679–80. It was only after the trial and our decision in Bixler that it decided to reinstate that claim. See In re Unisys Corp., 1994 WL 284079 at *25–27. It was the propriety of that decision to reinstate, and only the propriety of that decision, that was before us as a certified issue in that interlocutory appeal. We held that reinstatement was appropriate and remanded "for further proceedings."[10] Unisys II, 57 F.3d at 1269.

_____

10. At times, the plaintiffs appear to read our opinion as, in effect, directing the entry of summary judgment in their favor on at least the voluntary decision to retire claims. We do not so read the opinion, and the District Court did not so read it. At that point, Unisys had been provided with no opportunity to build a trial or summary judgment

18

It is true, as Unisys stresses, that our opinion addressed the issue for decision in the context of the plaintiffs having relied to their detriment in making decisions to retire. That was our focus because that was the plaintiffs' primary contention, and the absence of any refer ence to other kinds of reliance can hardly be taken as a ruling that other forms of reliance could not provide a valid basis for relief. We therefore reject the District Court's view that Unisys II, as a matter of law, limits recovery on the br each of fiduciary duty claims to claims based on voluntary decisions to retire. Moreover, we have found no other precedent supporting that position.

The District Court expressed two related concerns in the course of granting summary judgment to Unisys on the claims not based on voluntary retirement decisions: a concern about opening Unisys to unjustifiably broad relief and a concern about inconsistency with this Court's disposition of the estoppel claims. It expressed those concerns as follows:

> In allowing the breach of fiduciary claims to go forward, this court and the Court of Appeals for the Third Circuit have essentially held that r eliance by the employees on the misrepresentations of Unisys, while not "reasonable reliance" for purposes of a claim of equitable estoppel, can still support a claim for br each of fiduciary duty. In a sense, the rulings in this case

_____

record in opposition to Bixler claims, and any ruling on the merits of those claims would have been inappropriate. On remand, the District Court noted that the breach of fiduciary duty claims had not been before it during the trial on the contract and estoppel claims and that, when reinstating those claims, it had made no deter mination that any plaintiff had proven his breach of fiduciary duty claim. On the contrary, the District Court on remand quoted the following observations it had made at the time of reinstatement:

> [B]ecause some plaintiffs have str onger cases than others based on their specific inquiries and the information given to them personally,
> the court finds that subclasses, and possibly even individual hearings, will be necessary to adjudicate these claims.

In re Unisys Corp., 957 F. Supp. at 645.

19

excuse the plan participants from their failur e to read their summary plan documents in the limited context of making the retirement decision: because of the breach of duty, the employees may have r etired earlier than they otherwise would have, and even if their reliance on the misrepresentations was not reasonable, the reliance supports a breach of fiduciary duty claim because it was at least partially the fault of Unisys.

The "unreasonable" reliance excused here is narrow, and supports a breach of fiduciary duty claim only in certain limited circumstances--in this case, where the employees retired earlier than they might have had they not been misled by the lifetime misrepresentations. This court believes that expanding the concept of "resulting harm" in this case to the types of reliance alleged in the retir ees' affidavits would create an unjustified expansion of the narr ow holdings of this court, and would by indirection r einstate the claims for equitable estoppel.

In re Unisys Corp., 957 F. Supp. at 644.

The District Court's characterization of our decision in Unisys II as excusing "unreasonable r eliance" is inappropriate. We did not there hold that the existence of the SPD was irrelevant to the analysis of the breach of fiduciary duty claims. An employer, even when acting in a fiduciary capacity, is not responsible for harm that is not reasonably foreseeable. As we pointed out in our prior opinion in this case and in Adams, in or der for relief to be afforded, the conduct of the fiduciary must be such as to create a "substantial likelihood that it would mislead a reasonable employee in making [a decision to change his or her position]." Unisys II, 57 F .3d at 1264. Any determination of whether Unisys conveyed a message that was "materially misleading" in this sense cannot simply ignore the existence of the SPD. Rather , what we held on this score in Unisys II was as follows: (1) that the SPD did not as a matter of law satisfy Unisys' fiduciary responsibility; and (2) that there was evidence from which a trier of fact could conclude that Unisys should have foreseen that its conduct with respect to at least some of the class would cause reasonable employees to r ely to their

20

detriment, despite the existence of the SPD. Whether that is the case depends, of course, on the content of the message conveyed and the context in which it was conveyed.

We did recognize in Unisys II that there are situations in which a fiduciary can reasonably foresee unreasonable reliance and, accordingly, be held accountable. Bixler, 12 F.3d 1292 (3d Cir. 1994), provides an example. Mrs. Bixler there acknowledged that she had received a notice from the fiduciary concerning a right to apply for COBRA health care insurance, but she mistakenly believed that she and her husband were not eligible to do so because he was already hospitalized. Shortly after Mr. Bixler's death but still well within the period when she could have elected to secure COBRA coverage, Mrs. Bixler called the fiduciary's representative to inquire about a death benefit. The fiduciary accurately informed her that ther e was no death benefit but failed to advise her that she could r eceive reimbursement for her husband's considerable hospital expenses by signing and returning the COBRA notice the fiduciary had sent to her husband. We concluded that there was evidence from which a trier of fact could infer that the fiduciary was aware of the Bixlers' cir cumstances and of Mrs. Bixler's mistaken belief about the unavailability of COBRA insurance. See id. at 1302-03. In these circumstances, we held that the trier of fact could find a breach of fiduciary duty, and we did so without inquiring whether Mrs. Bixler's understanding of the COBRA notice was reasonable or unreasonable.

Our decision in Bixler is based on a fiduciary's duty to deal fairly with its beneficiary and, more specifically, "to communicate to the beneficiary material facts af fecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection." Bixler, 12 F .3d at 1300, quoting Restatement (Second) of Trusts, S 173, comment (d) (1959). As we noted in Unisys II, there is evidence here with respect to some employees from which a trier of fact could conclude that specific inquiries were made giving notice to Unisys representatives that the employees could be expected to make retirement decisions based on the mistaken belief that their health benefits were guaranteed for life. See

21

Unisys II, 57 F.3d at 1266. Under Bixler, in these situations, a duty to advise of the reservation of rights clause would arise, and the existence of the SPD would not be relevant.

We also recognized in Unisys II that a duty to advise affirmatively of the reservation of rights clause might have arisen even in the absence of beneficiary-specific information concerning confusion or mistake. The evidence then of record, we suggested, could per mit a finding that Unisys had acquired knowledge of confusion so pervasive that a reasonable fiduciary would have done more than simply rely on its SPD. See id. We did not, however, require clairvoyance on the part of the fiduciary. The law requires only that a fiduciary deal fairly with his beneficiaries and, in doing so, that it "exercise such car e and skill as a man of ordinary prudence would exercise" in his own affairs. Restatement (Second) of Trusts, S 174.

A judgment remains to be made as to whether a reasonable fiduciary in Unisys' position would have foreseen that its conduct towards the various plaintiffs would result in important decision making on their part based on a mistaken belief that they possessed guaranteed lifetime benefits. In situations involving actual knowledge on the part of Unisys that an employee was about to rely on such a misunderstanding, we agree with the District Court that the existence of the SPD is irrelevant. In other situations, however, the fact that Unisys had distributed what purported to be an authoritative guide to benefits is one of the circumstances that must be consider ed in passing this judgment on its conduct.

We do not believe holding Unisys to the kind of fair dealing standard we recognized in Unisys II will impose an unfair burden upon it even if it is held to that standard in the context of decisions other than voluntary r etirement. We stress, however, that the character of the decision made and reliance claimed will, of course, play an important role in determining the extent of Unisys' fiduciary duty and whether that duty was breached. We also note that the District Court has not yet addressed what equitable remedies may be available to members of the class. Common law damages are not recoverable under ERISA for

22

a breach of fiduciary duty, and this fact may also limit Unisys' exposure. See Mertens v. Hewitt Assoc., 508 U.S. 248 (1993).

Our insistence on reasonable foreseeability as a prerequisite to legal responsibility on the breach of fiduciary duty claims is not inconsistent with our resolution of the plaintiffs' estoppel claims in Unisys I. As our earlier quotation above from our prior opinion demonstrates, those claims were predicated on an allegation that the plaintiffs had relied to their detriment on the text of the plan and SPD. See Slip at 25, supra. On that occasion, we summarized our holding as follows:

> Because our decisions require that any detrimental reliance on plan language also be "r easonable," our finding that the [reservation of rights clauses] are unambiguous undercuts the reasonableness of any detrimental reliance by the retirees. Accordingly, we hold that the district court did not err in concluding, on summary judgment, that the retirees' estoppel claim failed as a matter of law.

Unisys I, 58 F.3d at 908. The claim here, however, is not that the retirees relied on the text of the plans or the SPDs, but rather that they relied on counseling which they received from Unisys representatives.

IV.

The District Court's order dated March 10, 1997, will be reversed and this matter will be remanded to the District Court for further proceedings consistent with this opinion.

23

MANSMANN, Circuit Judge, concurring in part, and concurring in the result in part.

I am pleased to join with my colleagues in Part III of the majority opinion, which recognizes that an ERISA fiduciary who has created confusion about rights under a benefit plan has an ongoing responsibility for har m stemming from beneficiaries' decisions attributable to that confusion. While I also agree with the holding in Part II of the majority opinion that summary judgment must be reversed, I am unable to subscribe to the reasoning of that Part II because it threatens to undercut a fiduciary's r esponsibility by allowing a safe harbor so long as the breachingfiduciary arranges to keep the beneficiaries in the dark for six years after they rely on his misrepresentations. I believe that the majority's analysis of the statute of limitations af fords too little protection for trusting workers by using an artificial notion of detriment to start the statutory period, by disregarding the fiduciary's ongoing obligation to correct known misunderstanding, and by effectively writing out of the statute the doctrine of tolling until discovery of a self-concealing wrong.1

_____

1. Part II of the majority opinion contemplates entry of summary judgment against retirees whose claims (i) are based solely on retirement decisions made more than six years befor e this action was filed, and (ii) were not concealed by Unisys's advice. It is not clear that any actual person's claim will meet these criteria, however . As the majority recognizes, retirees may rely on the presence of medical coverage in making many of life's decisions beyond the decision to retire. Most people probably take such vital backgroundfinancial circumstances into consideration, at least tacitly, in everything that they do. Moreover, as explained below, I believe that all of these participants and beneficiaries
detrimentally relied on Unisys's ongoing impr oper omission to correct its misrepresentations in declining to sue before they ultimately brought this action.

In light of the wide scope of Unisys's alleged concealment, and the potentially pervasive presence of acts of r eliance beyond the retirement decision, my disagreement with Part II of the majority's analysis may be no more than theoretical, as it may well be that no claims at issue are "based solely on retirement decisions", and that all claims fall within the
saving provisions of Part IIA or Part III.

I.

The applicable statute of limitations requir es that claims be brought within six years of the "date of the last action which constituted a part of the breach or violation." 29 U.S.C. S 1113(1)(A). As the majority acknowledges, the "last action" necessary to make out the claims at issue is detrimental reliance. See Opinion at 15 (r eferring to material misrepresentation and detrimental reliance as elements) (quoting Adams v. Freedom For ge Corp., 204 F.3d 475, 492 (3d Cir. 2000)). See also Unisys II, 57 F.3d at 1265 (defining elements of claim for fiduciary breach as (1) proof of fiduciary status, (2) misrepr esentations, (3) company knowledge of confusion, and (4) resulting harm).2

The majority reasons, essentially, that the br each of duty by Unisys was its misrepresentation of the plan's provisions, and the detriment or "resulting harm" to the participants was their retirement without the protection of a guarantee. See Opinion at 15-16. This ef fectively reads the element of harm or detriment out of the claim. Although the retirement decisions wer e made in reliance, such reliance did not become detrimental until Unisys announced termination of the promised post-retirement medical benefits. If the benefits had continued, there would have been no injury. Cf. Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon `contingent future events that may not occur as anticipated, or indeed may not occur at all.' ") (quoting Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580-81 (1985)). Here, resulting har m was contingent on the company's future conduct.

The majority argues that actual harm is not a necessary element of a claim for breach of fiduciary duty. While that may be correct as a general proposition, it is incorrect as

_____

2. We recently observed that construction of ERISA's six-year statute "implicates sophisticated questions about whether the statute begins to run at the date of the misrepresentations, the date of the plan amendment, or some other date". Adams, 204 F.3d at 494 n.19. As will appear, I believe it runs from the date of the detrimental amendment, while the majority believes it runs from "some other date" -- viz., the date of the last act undertaken in reliance on the misrepresentations.

25

applied to the subset of fiduciary claims pr edicated on detrimental reliance. "Actual harm" and "detriment" appear to be synonymous. To the extent that ther e may be a difference between legal detriment and actual harm, only the latter should start the clock running for the statute of limitations. The significance of harm in the limitations context is that it brings the existence of the claim home to the claimant so that he may reasonably be expected to act. This purpose is not well served by a technical notion of "detriment" that does not actually impact the claimant.3

The majority illustrates its view of detriment by hypothesizing that an employee who "sought counsel" and took early retirement based on the company's assurance of lifetime health care could "surely" bring suit immediately and secure rescission of her retir ement or other appropriate equitable relief.4 Opinion at 15. However, the question of

_____

3. Moreover, cases holding that it is not necessary to demonstrate harm to establish a breach of fiduciary duty do not stand for the proposition that harm, where present, is not part of the breach. See Adams, 204 F.3d 475, 492 (3d Cir. 2000). Fiduciary conduct is measured in light of all the attendant circumstances. There is a qualitative difference between an act by a fiduciary which falls short of the standard imposed by law and an act that also injures cestui que trust. Consequently, even a "non-fiduciary" act by the company which imposes injury on a beneficiary left vulnerable by a prior fiduciary breach becomes "part of the breach," and worsens it character. Thus, the "last action" could consist in the imposition of harm where it is part of the fiduciary breach, even if it were not a required element.

4. Although the question of remedy is not now before us, the majority's reference to rescission as an illustrative remedy is significant. As the majority recognizes in Part III, participants may rely on their misapprehension of the plan benefits in many ways beyond deciding to retire. Some of these acts of reliance -- those involving expenditures or commitments made in expectation of a strongerfinancial position -- would be difficult to rescind, and rescission would not make the participant whole. So in general the rescission remedy may be unwieldy and inadequate. This follows from the majority's unrealistic assumption that the decisions themselves constitute the detriment to be redressed; whereas, actually the harm to be r emedied is the unexpected withdrawal of promised benefits.

If instead of assuming that the object of a suit is to undo the retiree's life decisions, we recognize that the paradigmatic remedy may be

26

what actual or prospective harm is sufficient to allow suit by one apprized of her rights is not before us. 5 To my view, a more apt hypothetical concerns whether the estate of a participant who died before the old plan was terminated, and so received the promised medical benefits for life, would nevertheless be able to sue for breach offiduciary duty because the promised benefits, though paid, had not been sufficiently assured by the written plan? Surely not. The claim would fail due to the absence of actual injury. Thus, while I am not prepared to say that a retiree may never bring suit prior to enactment of a thr eatened detrimental change, I do not believe that the statute of limitations requires her to bring a pr eemptive action to ward off potential harm that might never occur.

Accordingly, I would hold that the "last action which constituted a part of the breach" for statute of limitation purposes was the termination of the medical benefits that Unisys had assured the retirees they would receive for life, rather than any particular decisions the retir ees made on the strength of that assurance.6

II.

Even if our statute of limitations analysis wer e limited to fiduciary conduct by Unisys, the retir ees' claims still should

_____

enforcement of the promise on which the participants relied, then it becomes clear that the injury that triggers the suit results from the fiduciary's failure to comply with the pr omise, rather than from the employee's decision to retire. Cf. Unisys II, 57 F.3d at 1269 (indicating that "an injunction ordering specific per formance of the assurances Unisys made" is an equitable remedy available under 29 U.S.C. S 1132(a)(3)).

5. That question concerns the requir ement that we may only decide cases and controversies, and so turns on different policies from those underlying the statute of limitations.

6. I disagree with the majority's statement that it is merely "fortuitous" that the fiduciary that misrepresented the permanency of the benefits is the same entity that ultimately cut off those benefits. To the contrary, it
was the ability of Unisys to honor its promises that helped to induce the retirees' reliance and created a real prospect that they would not be injured.

27

not be barred on the present recor d, as there is evidence that Unisys continued to breach its duty by failing to correct the mistaken beliefs that its prior misstatements created. Because this continuing breach involved an omission rather than an act, the six-year limitations period would not commence until "the latest date on which the fiduciary could have cured the breach or violation". 29 U.S.C. S 1113(1)(B).

As the majority observes, we have previously r ecognized that a fiduciary has a "duty to deal fairly with its beneficiary and, more specifically, `to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection.' " Supra at 21, quoting Bixler v. Central Pa. Teamsters Health & Welfare Fund , 12 F.3d 1292, 1300 (3d Cir. 1993).7 Here, the evidence suggests that Unisys breached this duty continuously from the time it first misrepresented the terms of the plan until the time the beneficiaries learned the material facts by receiving notice of the plan termination. Under the majority's holding, the beneficiaries' interests were not pr otected by the fiduciary's word, but could only be protected if they brought suit within six years. They therefore "needed to know for their protection" that the plan was not as it had been represented; and as the majority acknowledges in Part III of its opinion, there is evidence that Unisys knew that the employees were unaware of the material facts.

Unisys therefore had an ongoing duty to inform the participants of the true state of affairs. As long as Unisys had reason to believe that the retir ees remained unaware of the material fact that the company retained a right to cut off their "lifetime" medical benefits, it was a violation of trust (i.e., a breach of fiduciary duty) every day for Unisys not to inform them.8 See Adams, 204 F.3d at 493-94

_____

7. Indeed, "[t]he duty to disclose material information is the core of a fiduciary's responsibility." Harte v. Bethlehem Steel Corp., 214 F.3d 446, 452 (3d Cir. 2000) (quoting Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F .3d 1171, 1182 (3d Cir. 1996)).

8. As the majority recognizes, "a duty to advise affirmatively of the reservation of rights clause might have arisen even in the absence of

("[B]ecause Unisys was aware that it r etained the right to modify, a knowing failure to clarify the material information about the retention of power was breach of its fiduciary duty.").

Had Unisys told plaintiffs the truth, they could have acted to protect themselves. Cf. Harte v. Bethelehem Steel Corp., 214 F.3d 446, 448 (3d Cir. 2000) (holding that where beneficiaries might predictably and r easonably rely on a misinterpretation of a plan provision,"a fiduciary may be held liable for failing to inform a beneficiary" of his rights "in a timely manner . . . (so that he might attempt to protect himself)."). Consequently, the participants and beneficiaries should be permitted to pr ove that they relied to their detriment on Unisys's continuing non-disclosure, by refraining from bringing the pr esent suit until after the omitted information was supplied.

Recognition of an ongoing duty to correct prior misstatements entails that the statute of limitations does not run while a misstatement remains uncorr ected.9 Conversely, the majority's holding that the statute runs from the date of retirement amounts to absolving the fiduciary from any ongoing duty to corr ect the misstatement. Today's holding is therefor e contrary to our decisions in Bixler and Harte.

III.

The most troubling aspect of the majority opinion is its treatment of the self-concealing wrong issue. As the

_____

beneficiary-specific information of confusion or mistake" where the fiduciary has "acquired knowledge of confusion so pervasive that a reasonable fiduciary would have done mor e than simply rely on its SPD." Supra at 22 (citing Unisys II, 57 F .3d at 1266). This duty is independent of the reasonableness of, or even the r easons for, the misapprehension.

9. It might be objected that recognition of an ongoing duty would result in an open-ended statute of limitations. However , I believe that it is entirely consistent with public policy and the federal common law embodied in the "fraud or concealment exception" to hold that a fiduciary who has misled his beneficiary may never seek refuge behind the statute of limitations as long as he allows the deception to continue unabated.

majority observes, in Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1552 (3d Cir. 1996) we "expr essly reserved the issue, elsewhere debated, of `whether S [1113]'s six year period extends to both "self-concealing" wrongs as well as "active concealment" separate from the underlying wr ongdoing.' " Supra at 10. Although the majority does not expr essly state whether its opinion is meant to address that issue, its requirement of "affirmative steps to conceal beyond the misrepresentations themselves" in or der to toll the statute, supra at 11 n.5, amounts to an outright r ejection of the self-concealing wrong doctrine. A requir ement of additional conduct beyond the breach itself is fundamentally at odds with the concept that a wrong may be self -concealing.

I believe that the majority errs in interposing an additional requirement of an affir mative act of concealment on self-concealing wrongs. In so holding, it permits the ERISA statute of limitations to become an instrument to immunize fiduciary wrongdoing.

The "fraud or concealment" provision incorporates the long-established principle of federal common law that a statute of limitations is tolled until discovery of the wrong where there is either underlying fraud or separate acts to conceal wrongdoing.10 As the Seventh Circuit has explained,

> The reading we adopt . . . interprets the phrase "fraud or concealment" in a way that gives both ter ms meaning. An ERISA fiduciary can delay a wr onged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary never becomes aware of them (concealment).
>
> . . . [T]his interpretation of "fraud or concealment" harmonizes the phrase's meaning with the widely known doctrine of fraudulent concealment, which tolls the running of a statute of limitations when the

_____

10. The effect of the majority's requirement of additional acts of concealment even in cases of self-concealing fraud is to allow tolling only
in cases of concealment, and so to write the fraud alternative out of the statutory exception.

30

> defendant has prevented the plaintiff 's timely discovery
> of the wrong she has suffered.

Radiology Ctr., S.C. v. Stifel, Nicholas & Co., 919 F.2d 1216, 1220 (7th Cir. 1990). See also Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1552 (3d Cir. 1996) (observing that S 1113 "does not protect defendants in instances involving concealment or fraud") (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992)) (emphasis added).

The majority misinterprets our decision in Kurz as holding that even where concealing acts occur in the course of the underlying breach, "there must be conduct beyond the breach itself that has the effect of concealing the breach from its victims." Supra at 10. On the contrary, in Kurz, we expressly distinguished "self-concealing wr ongs" from " `active concealment' separate from underlying wrong". Id. at 1552 n.5.[11]

This case is not like Kurz. There was no occasion to address the effect of a self-concealing wrong there, because there was no concealment. Indeed, we observed in Kurz that the employer's announcement of the amendment at issue just 35 days after the alleged misrepr esentation "exemplifie[d] the type of timely notification that companies should give their employees", and "for eclosed any suggestion that [the employer] attempted to conceal its plans or engaged in a campaign of fraud to pr event the plaintiff class from suing for the alleged breach". 96 F.3d at 1552. In the present case, in contrast, the company's conduct was far from exemplary, as it engaged in a

_____

11. See also Bailey v. Glover, 88 U.S. 342, 349-50 (1874) (distinguishing between a fraud which "has been concealed" and one which "is of such character as to conceal itself "). Indeed, the majority opinion expressly acknowledges this distinction: "In this context,`a self-concealing act is an act committed during the course of the original fraud that has the effect of concealing the fraud from its victims, [while a]ctive concealment refers to acts intended to conceal the original fraud that are distinct from the original fraud.' Wolin v. Smith Bar ney, Inc., 83 F.3d 847, 852 (7th Cir. 1996)." Supra at 10. Nevertheless, it proceeds to conflate the two concepts by requiring acts distinct from the original breach even where concealment occurs in the course of the underlying breach. See supra at 10-11.

"systematic campaign of confusion." In r e: Unisys Corp.
Retiree Medical Benefit "ERISA" Litigation, 1994 WL 284079
at 33 (E.D. Pa. June 24, 1994); see also In r e: Unisys Corp.
Retiree Medical Benefit "ERISA" Litigation, 1996 WL 455968
at *4-6 (discussing sufficiency of evidence of systematic
misrepresentation and confusion in r einstating claims of
Burroughs and Unisys plaintiffs). As discussed above, one
effect of the resultant confusion was to mislead
beneficiaries into believing they had no need or cause to sue.12
Consequently here, unlike in Kurz, it is necessary to
consider the effect of such self-concealing misconduct on
ERISA's statute of limitations.

The rationale underlying the self-concealing wr ong
doctrine has long been recognized in our law:

> To hold that . . . by committing a fraud in a manner
> that it concealed itself until such time as the party
> committing the fraud could plead the statute of
> limitations to protect it, is to make the law which was
> designed to prevent fraud the means by which it is
> made successful and secure.

Bailey v. Glover, 88 U.S. 342, 349 (1874). This principle
that the law should not reward concealment is particularly
applicable in the context of a fiduciary r elationship. See
Amen v. Black, 234 F.2d 12, 26 (10th Cir . 1956) ("The law
does not require one to suspect his fiduciary. Surely no one
would contend that the . . . statute of limitations was
intended to impose upon the defrauded party the bur den of
discovering a fraud perpetrated by one standing in a
position of trust.").13

_____

12. See Barker v. American Mobile Power Corp. , 64 F.3d 1397, 1402 (9th
Cir. 1995) (fraudulent concealment involves"affirmative conduct upon
the part of the defendant which would, under the cir cumstances of the
case, lead a reasonable person to believe that he did not have a claim for
relief "). Cf. Lettrich v. J.C. Penney Co., Inc., 213 F.3d 765 (3d Cir.
2000)
(holding placement of amendment notice within technical document and
failure to use more effective channels would support inference that
employer intended to conceal amendment from af fected employees).

13. Congress enacted ERISA to "pr otect . . . the interests of
participants
in employee benefit plans . . . by establishing standards of conduct,
responsibility and obligation for fiduciaries." 29 U.S.C. S 1001(b). ERISA

If ever a case calls for application of the self-concealing wrong doctrine, this is such a case. Considering the facts in the light most favorable to the participants, as the party opposing summary judgment: Unisys purposely systematically misled its workers into believing that they had a legally protected right to medical benefits for life;14 it perpetuated the misinformation by repeating its misstatements to many employees over a period of years;15 and it avoided any action that would have br ought the misrepresentation to the participants' attention, by paying the benefits until after the statutory period had passed.

Thus, Unisys's conduct may be distinguished fr om a garden-variety fiduciary breach by two important factors: first, the beneficiaries were deceived, and remained so, to Unisys's knowledge, for several years, until shortly before suit was filed; and second, the deception was pr ocured by a systematic course of repeated misrepr esentations calculated to prevent the entire class of aggrieved retirees from learning the truth. I believe this amounts to a self-concealing wrong, sufficient to toll the statute without regard to "additional" conduct -- such as telling retirees

_____

should therefore be applied to avoid r esults that "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1257 (3d Cir. 1993). Enabling fiduciaries to secure immunity for their self-concealing misrepresentations by lapse of time would violate this principle.

14. See Unisys II, 57 F.3d at 1266 (noting that the District Court "found that the company, both actively and affirmatively, systematically misinformed its employees about the duration of their benefits").

15. See Unisys II, 57 F.3d at 1265 ("Here the district court found that virtually the entire company management had consistently misrepresented the plan, not just on one occasion to one employee, but over a period of many years and both orally (in gr oup meetings) and in writing (in newsletters) as well."). I disagr ee with the majority's offhand
remark that mere repetition of a misr epresentation cannot constitute concealment -- especially in the present context, where the misrepresentation was repeated to all and sundry, creating pervasive misunderstanding. It seems clear that consistent r epetition of a falsehood to all employees would well serve to pr event the truth from becoming known.

33

that the reservation of rights in the SPD did not apply to them -- which the majority properly finds sufficient to create a triable issue of concealment.16

The majority gives great weight to Unisys's distribution of a Summary Plan Description with a reservation of rights clause. Any implication that there can be no concealment where an accurate SPD is provided is inconsistent with our cases holding that participants can be misled despite an accurate SPD, and that a fiduciary should not be permitted to prey upon the participants' foreseeable confusion.17 Moreover, it is inconsistent with the majority's own recognition of evidence that, "despite the existence of the SPD", employees had "the mistaken belief that their health benefits were guaranteed for life." Supra at 21.18

_____

16. I agree with the majority's conclusion that the company's advice that the reservation of rights clause "pertained to active employees and not to retirees" supra at 6, quotingIn re Unisys Corp., 1994 WL 284079 at*34, amounts to an affirmative step to conceal the effect of the clause at issue, and thus to conceal the retirees' potential injury. Cf. Adams, 204 F.3d at 492 (finding participants likely to succeed on merits notwithstanding explicit reservation of rights where participants contended that, based on the employer's communications, they "reasonably believed that the active employees' booklets did not apply to them").

17. See, e.g., Adams, 204 F.3d at 492-93 ("[A] company cannot insulate itself from liability by including unequivocal statements retaining the right to terminate the plans at any time in the SPDs. . . . . [C]onflicting
assertions cannot be ignored because they ar e not in the formal ERISA document."); Harte, 214 F.3d at 451 n.6 ("[T]he fiduciary duty to disclose and explain is not achieved solely by technical compliance with the statutory notice requirements."); Unisys II, 57 F.3d at 1264 ("[S]atisfaction . . . of . . . disclosur e obligations [through an SPD] .
. .
does not foreclose the possibility that the plan administrator may nonetheless breach its fiduciary duty . . . to communicate candidly, if the plan administrator simultaneously or subsequently makes material misrepresentations to those [to] whom the dut[ies] of loyalty and prudence are owed.").

18. The majority holds that the SPD is but "one of the circumstances that must be considered" on the question offiduciary breach. Supra at 22. The same must hold true for the role of the SPD on the question of concealment.

34

In sum, this case involves systematic conduct by Unisys that foreseeably led participants and beneficiaries to believe that they did not have a claim.19 That the concealing acts were woven into the fabric of Unisys's initial wrongdoing should be of no moment. Accordingly, I concur with the majority's holding that the plaintiffs have established at least a triable issue as to whether this is a case of "fraud or concealment", so that the statute of limitations would only begin to run upon discovery of the breach.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

19. As the majority concludes in Part III of its opinion, "there was evidence from which a trier of fact could conclude that Unisys should have foreseen that its conduct . . . would cause reasonable employees to rely to their detriment, despite the existence of the SPD." Supra at 20. By
the same token, a factfinder could conclude that Unisys's conduct would cause those employees "to believe that [they] did not have a claim for relief " -- which is the essential characteristic of concealment. Barker, 64
F.3d at 1402.