

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2001

# Daniels v. Thomas & Betts Corp

Precedential or Non-Precedential:

Docket 00-1974

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Daniels v. Thomas & Betts Corp" (2001). *2001 Decisions.* Paper 191.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/191

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 24, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-1974

IDA K. DANIELS, Widow of Charles P. Daniels, Deceased

v.

THOMAS & BETTS CORPORATION; ELECTRICAL
DIVISION OF THOMAS & BETTS CORPORATION; JOHN
SCHIERER; JOHN DOES I-X; ABC CORPORATION, I-X

       Thomas & Betts Corporation, Electrical
       Division Of Thomas & Betts Corporation
       and John Schierer,
       Appellants

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 95-cv-00490)
District Judge: Honorable John W. Bissell

Argued February 6, 2001

BEFORE: BECKER, Chief Judge, AMBRO and
STAPLETON, Circuit Judges

(Opinion Filed: August 24, 2001)

Steven B. Varick (Argued)
McBride, Baker & Coles
500 West Madison Street, 40th Floor
Chicago, IL 60606

Steven R. Weinstein
Dunetz Marcus
354 Eisenhower Parkway
Plaza II, Suite 1500
Livingston, NJ 07039
 Attorneys for Appellants

John M. Esposito (Argued)
Unit A2
870 Pompton Avenue
Canfield Office Park
Cedar Grove, NJ 07009
 Attorneys for Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellee/Plaintiff Ida K. Daniels ("Mrs. Daniels"), widow of Charles P. Daniels ("Mr. Daniels"), sued her husband's former employer, Thomas & Betts Corporation ("T&B"), for breach of fiduciary duty, delay in providing ERISA plan documents, and attorney's fees. She alleged inter alia that T&B materially misled Mr. Daniels into believing that he had 1.5 times his annual salary in supplemental life insurance in addition to the one times annual salary life insurance T&B provided Mr. Daniels as an employment benefit.

The District Court granted Mrs. Daniels' motion for summary judgment as to liability on the breach of fiduciary duty claim. It further held, however, that there were genuine issues of material fact as to the type of equitable relief that should be awarded as a result of that breach. The District Court also granted Mrs. Daniels summary judgment on her claim that T&B failed for 291 days to provide her plan documents in violation of S 104(b)(4) of

2

ERISA, 29 U.S.C. S 1024(b)(4). It awarded her the maximum statutory penalty of $100 per day, or $29,100.

The District Court referred the determination of equitable relief on the breach of fiduciary duty claim to an arbitrator who subsequently awarded Mrs. Daniels $40,545. Thereafter, the District Court approved an attorney's fees award of $34,482.28 and entered final judgment in the amount of $104,127.28, plus interest and taxable costs. T&B appeals. We will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

I.

Mr. Daniels worked for T&B from 1955 until his death from cancer in 1993. Prior to 1993, Mr. Daniels received life insurance in the amount of one times his annual salary at T&B's expense as an employment benefit. Also prior to 1993, Mr. Daniels elected to supplement this insurance by purchasing group life insurance having a face value of 1.5 times his annual salary. The premiums for this supplemental insurance were the same without regard to the employee's age and were deducted from the employee's paycheck.

T&B changed its insurance carrier and, concomitantly, the structure of its life insurance benefits, effective January, 1993. Under the new plan (the "MetLife plan"), T&B continued to provide at its expense life insurance in the amount of one times annual salary as an employment benefit. Employees could continue to purchase supplemental life insurance, but now only in whole (rather than fractional) multiples of salary. Moreover, the premiums for this supplemental coverage were "age-banded" so that they increased with the employee's age.

In the fall of 1992, Mr. Daniels became ill and took a medical leave from T&B. In early December, T&B sent Mr. Daniels a number of documents explaining the life insurance benefits changes that would become effective on January 1, 1993. The information packet began with a memorandum from John Schierer, T&B's Manager of

Employee Relations, to "ALL OFFICE EMPLOYEES." With regard to life insurance, the memo stated that:

> Life Insurance Maximums will be increased to a maximum of five times base salary on [sic] $500,000 whichever is less. Thomas & Betts will continue to provide one times base salary free of charge. Additional multiples will be available on an age-banded basis. Details are attached.

The first attached document is entitled, "OPEN ENROLLMENT / GROUP TERM LIFE INSURANCE / EFFECTIVE JANUARY 1, 1993." The document again explains that T&B "will provide salaried employees one times their base salary in group term life insurance to a maximum $500,000." The document then sets forth the following two paragraphs which give rise to this suit:

> If you currently have supplemental coverage, you will be grandfathered up to your current amount. If your current coverage amount is less than 5 times base salary, you then have the option of electing an additional 1 times base salary up to an incremental $100,000 without additional proof of insurability.

> Employees who do not currently have supplemental coverage will be guaranteed coverage for 2 times base salary up to $200,000. Proof of insurability will be required for the additional coverage chosen in excess of 2 times.

An additional document, entitled "LIFE INSURANCE," further explains T&B's employees' supplemental life insurance benefits as follows:

> In addition to your Basic Life Insurance, you may purchase Supplemental Life Insurance by enrolling in the program and paying the required premium.

> Amount of Coverage

> You may purchase Supplemental Life Insurance in amounts of one, two, three, four or five times your base salary.

On December 20, 1992, Mr. Daniels met with Schierer. Mr. Daniels asked a number of questions about his

4

benefits, none of which related to supplemental life insurance. In the context of his health care benefits, Mr. Daniels expressed an interest in increasing his take-home pay in light of the layoff T&B had warned him he would soon face. At some point during the conference, Mr. Daniels executed a "Group Insurance Enrollment/Change Form." The form provided an option for "Your Supplemental Life Insurance" and stated, "I wish to purchase Supplemental Life Insurance in the amount indicated below.*" The possible choices were "None," "1 time,""2 times," "3 times," "4 times," and "5 times my annual earnings." The "asterisk" footnote stated: "I understand that I may have to provide medical evidence of insurability before this coverage becomes effective." Mr. Daniels placed an "X" in the blank next to "None."

In her deposition, Mrs. Daniels testified to statements Mr. Daniels made after the December 20 meeting that tended to show what he thought he had done with respect to his supplemental life insurance. Mrs. Daniels testified that after the terminal nature of her husband's condition became known in January, 1993, he told her "four or five times" that she would receive 2.5 times his salary in life insurance benefits. She further testified that subsequent to the new benefits plan becoming effective, her husband reviewed his payroll deductions for a supplemental life insurance entry and, finding one, told her that"it was in order."[1]

_____

1. Mr. Daniels' January 14, 1993, pay statement showed an insurance deduction in the same amount as his prior statements. His February 11, 1993, pay statement appears to contain a $50.97 insurance deduction; that amount is listed under the heading "Deduction Type." Despite this entry's appearance, it is in fact a credit. The pay statement itself contains no visible indicia that this entry, listed as it is below the heading "Deduction Type" and next to other, true deductions, is in fact a credit. One only discovers that this entry is in fact a credit if one takes
Mr. Daniels' February 11, 1993, gross pay and actually calculates his net pay. Mr. Daniels' March 15, 1993, pay statement, issued four days after his death, shows no deduction for supplemental insurance.

T&B explains that because it had not implemented all of the MetLife benefits changes as of Mr. Daniels' January 14, 1993, paycheck, it erroneously deducted $20.54 for supplemental life insurance. Although T&B is correct that the February 13, 1993, entry is in fact a credit and not a deduction, it points to no record evidence to support its explanation of what necessitated this pay adjustment.

After Mr. Daniels' death, Mrs. Daniels received payment of $53,000, representing one times her husband's annual salary. Mr. Daniels' son, Charles, Jr., asked Schierer if the family was entitled to any additional life insurance benefits in light of the supplemental life insurance his father had been electing. Schierer produced the form on which Mr. Daniels had marked "None" and informed the Daniels that there were no additional life insurance benefits. Mrs. Daniels then obtained counsel who, on September 29, 1994, wrote to T&B and requested "all benefit plan document [sic] or plan summaries which explain any and all plan terms, benefits, and procedures applicable to benefits available to Mr. Daniels." T&B did not respond to Mrs. Daniels' attorney's request until July 17, 1995, 291 days later.

II.

The District Court held that T&B, as the administrator of an ERISA plan, had a fiduciary duty not to "materially mislead those to whom the duty of loyalty and prudence are owed." App. at 16 (quoting from In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 57 F.3d 1255, 1261 (3d Cir. 1995)). A misrepresentation, it explained, is material if "there is substantial likelihood that it would mislead a reasonable employee into making" a decision to his or her detriment. Id. T&B does not dispute that it had a fiduciary duty; it does dispute that it breached that duty.

The District Court concluded that T&B made a material misrepresentation to Mr. Daniels. As the Court succinctly put it:

> The Court concludes that defendants made a material misrepresentation to Mr. Daniels when they stated in documents sent to him to explain the change in benefits: "If you currently have supplemental coverage, you will be grandfathered up to your current coverage amount." (Esposito Cert., Exh. F). Black's Law Dictionary defines "grandfather clause," in relevant part, as: "Provision in a new law or regulation exempting those already in or a part of the existing system which is being regulated." (Id.) On its face,

defendants' statement conveyed that employees who already had supplemental insurance coverage would be exempted from the changes to defendants' policy.

* * *

There is no elaboration on this grandfather clause anywhere in the remainder of the explanatory memorandum where that sentence is found or in the other information defendants provided to Mr. Daniels, i.e., the cover memorandum, the enrollment form, and the information Mr. Schierer says he conveyed to Mr. Daniels at the December 20, 1992 meeting.

* * *

Defendants' statement that "[i]f you currently have supplemental coverage, you will be grandfathered up to your current coverage amount" was a material misrepresentation. (Esposito Cert., Exh. F). In fact, employees who already had supplemental insurance were not grandfathered up to their current coverage amounts. Instead, they had to elect to be grandfathered up to those amounts . . . .

App. at 17, 17–18, 18.

In the District Court's view, this finding of a material misrepresentation by an ERISA fiduciary was sufficient alone to warrant summary judgment against T&B "as to [its] liability." App. at 36. The Court made no finding as to whether Mr. Daniels actually relied on T&B's misrepresentation. Instead, it concluded that "genuine issues of material fact remain as to the type of equitable relief that should be awarded." In the course of so concluding, the District Court acknowledged that Mr. Daniels may not have relied upon the misrepresentation at all; instead, Mr. Daniels may have "purposely elected not to continue to pay for supplemental insurance." On the other hand, the Court observed, the evidence would support an inference that the "grandfathered" misrepresentation led Mr. Daniels to believe that he did not have to do anything to continue his existing supplemental insurance and that he should check "None" on the enrollment form to indicate that he did not wish to purchase any additional supplemental insurance.

7

The arbitrator explicitly acknowledged that the District Court had yet to find reliance: "This case boils down to the following questions. Did the grandfather clause cause the decline of the supplemental plan under the new policy and if so what is the remedy?" Having recognized the unresolved reliance issue, the arbitrator stated cursorily,"Considering the pros and cons of each party's argument makes[this] a case which should be decided equitably." The arbitrator then summarily awarded Mrs. Daniels $40,545 (or fifty-one percent of her desired recovery) plus costs.

With respect to appellees' claim that T&B violated 29 U.S.C. S 1024(b)(4) by refusing to comply with a request for the "instruments under which [an ERISA] plan is established or operated," the District Court held that: (1) a request from the attorney of a participant or beneficiary triggers the statutory duty to respond; and (2) Mrs. Daniels was a "beneficiary" as defined in ERISA at the time of her attorney's request even though she had previously received all of the insurance proceeds she was entitled to receive under the MetLife Plan. The District Court then noted that T&B had offered no excuses for its failure to provide the documents other than the legal arguments the Court had just rejected and pointed out that there had not even been a response to Mrs. Daniels asserting these legal positions. As a result, it imposed penalties of $100 per day for the 291 days T&B had refused to respond.2

_____

2. The District Court had jurisdiction pursuant to 28 U.S.C. S 1331 and 29 U.S.C. S 1132(f).

This court has jurisdiction pursuant to 28 U.S.C.S 1291. We reject Mrs. Daniels' argument that 28 U.S.C. S 657(a) deprives this court of jurisdiction to hear this appeal. Section 657(a) provides that arbitration awards made under Chapter 44 of Title 28 "shall be entered as the judgment of the court after the time [30 days] has expired for requesting a trial de novo. The judgment so entered shall be subject to the same provisions of law and shall have the same force and effect as a judgment of the court in a civil action, except that the judgment shall not be subject to review in any other court by appeal or otherwise ." (emphasis added). The arbitrator's award was entered on November 8, 1999, and T&B filed its demand for a trial de novo twenty-nine days later on December 7, 1999. In its notice demanding trial de novo, T&B stated that it only wished to preserve its right to challenge the District Court's liability

8

III.

Both sides claim to be entitled to summary judgment
with respect to T&B's liability on the breach of fiduciary
duty claim. Moreover, T&B insists that, even if it is not
entitled to such a summary judgment, the issue of liability
must be tried. In order to resolve these contentions and the
arguments addressed in support of them, we must
determine: (1) whether there is a material dispute of fact as
to whether T&B made a material misrepresentation; (2)
whether detrimental reliance is an essential element of Mrs.
Daniels' case on liability and, if so, whether there is a
material dispute of fact as to whether Mr. Daniels relied on
the "grandfathered" statement; and (3) whether summary
judgment could properly be entered against T&B on the
liability issue in the alleged absence of any evidence
tending to show that it was aware of confusion on Mr.
Daniels' part.

Mrs. Daniels' claim is that T&B breached its fiduciary
duty by misrepresenting that existing supplemental
insurance would be "grandfathered." We have reviewed the
elements of such a claim in two recent decisions, Adams v.
Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000), and In
re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,

_____

determinations on both the breach of fiduciary duty and S 1024(b)(4)
claims. T&B stipulated that "[t]o the extent . . . that the arbitration
award determined only the amount of the remedy to be awarded to [Mrs.
Daniels], . . . [T&B] do[es] not demand trial de novo and will accept
$40,545 as a reasonable calculation of the remedy, subject to [T&B's]
right to appeal the underlying issues of liability."

We have some question as to whether S 657(a) or Local Civil Rule
201.1 (the authority the arbitrator purported to exercise) can be read to
authorize referral to arbitration of an issue , as opposed to an action or
a claim. We need not determine that issue, however, because even if
those provisions are understood to authorize such a referral, they should
not be read to bar appellate review of issues that were adjudicated by the
court and not by the arbitrator. At least where a party makes it clear, as
did T&B, that it intends to preserve its right to appeal issues resolved
by
the court, neither Section 657(a) nor Local Civil Rule 201.1 precludes
our exercise of jurisdiction under 28 U.S.C. S 1291 to review issues that
were not resolved by the arbitrator.

9

242 F.3d 497 (3d Cir. 2001) [hereinafter Unisys III]. In Adams, we stated:

> An employee may recover for a breach of fiduciary duty [under ERISA] if he or she proves that any employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment.

Id. at 492; see also Unisys III, 242 F.3d at 505 (quoting Adams and noting that it elucidates "the elements of a breach of fiduciary claim"). Following Adams and Unisys III, it is thus clear that, in order to make out a breach of fiduciary duty claim of the kind here asserted, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation.

Like the District Court here, we explained in Adams that a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making a decision regarding his benefits under the ERISA plan. See id. "Summary judgment on the`question of materiality' is appropriate only if `reasonable minds cannot differ.' " Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993) (quoting from TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976)).

A. Material Misrepresentation

The portion of T&B's explanatory materials on which Mrs. Daniels primarily bases her case is set forth again in the margin for the reader's convenience.3 Mrs. Daniels

_____

3.  If you currently have supplemental coverage, you will be grandfathered up to your current amount. If your current coverage amount is less than 5 times base salary, you then have the option of electing an additional 1 times base salary up to an incremental $100,000 without additional proof of insurability.

Employees who do not currently have supplemental coverage will be guaranteed coverage for 2 times base salary up to $200,000. Proof of insurability will be required for the additional coverage chosen in excess of 2 times.

10

emphasizes that this portion advises someone in Mr. Daniels' position that his existing supplemental coverage "will be grandfathered up to your current amount." This clearly connotes, in her view, that existing supplemental insurance would continue unaffected by the new plan and that it would do so without further action on the part of the employee. While she acknowledges that this advice is followed by information about proof of insurability, she points out that everything following the first sentence expressly refers only to "additional" supplemental coverage or to "employees who do not currently have supplemental coverage." She insists that the notion that no action was required on the part of an employee who wished to continue only existing coverage was confirmed by the fact that the election form signed by Mr. Daniels provided an opportunity to elect coverage of only 1, 2, 3, 4 or 5 times earnings but provided no way to elect continuation of coverage of 1.5, 2.5, 3.5 or 4.5 times earnings. This aspect of the form clearly suggested that its purpose was to provide an opportunity to purchase supplemental insurance in "addition" to existing coverage, a suggestion that is supported by the footnote indicating that, whichever election was made, it might be subject to proof of insurability.

T&B counters by insisting that, in the context of its material as a whole, there was no significant risk that a reasonable employee would receive the understanding for which Mrs. Daniels contends. It emphasizes that under the old program, as well as the new, the "Basic Life Insurance" provided at T&B's expense was the only thing that was automatic and that supplemental insurance at the employee's expense had to be elected annually by him or her. It points out that Mr. Schierer's covering letter, which explains supplemental coverage and its cost to the employee, begins by stating, "It is once again time to make your Benefit Choices for 1993. Please note that you will have the following choices effective 1/1/93." App. at 56. T&B further notes that in the accompanying materials, the Basic Life Insurance is the only thing described as "automatic," and supplemental coverage is consistently described as elective.4 The term"grandfathered" appears

_____

4. "You are automatically covered for Basic Life Insurance . . . . You are also eligible to purchase Supplemental Life Insurance . . . ." App. at 59.

11

only once in this overall general context of elective supplemental coverage and then only in the specific context of proof of insurability. As a result, T&B argues that no reasonable employee was likely to conclude from its materials that supplemental insurance under the old program was being imposed on employees at their own expense with no opportunity provided on the form for opting out. The reasonable inference to be drawn from the materials, T&B insists, is that "grandfathered" referred to a right to elect to continue existing coverage without proof of insurability and that the only opportunities available for supplemental coverage were those provided for on the form, with those employees who had existing supplemental coverage being entitled to elect supplemental coverage without proof of insurability not to exceed existing supplemental coverage, i.e., in Mr. Daniels' case, 1 times earnings, since 2 times earnings would exceed his existing supplemental coverage of 1.5 times earnings.

We conclude that the message conveyed by the materials as a whole is a matter about which reasonable minds could differ. Accordingly, we conclude that summary judgment was entered contrary to the teachings of Fischer .

B. Detrimental Reliance

Mrs. Daniels claims that she is in a worse position than she would have been in if T&B had not made its "grandfathered" statement and seeks relief on that basis. Consistent with the above discussion of the elements of such a breach of fiduciary duty claim and contrary to the conclusion of the District Court here, she is not entitled to relief unless she can establish that her failure to receive more than $53,000 was attributable to Mr. Daniels' reliance on the alleged misrepresentation, i.e., that he wished his 1.5 times earnings coverage to continue and failed to effectuate that wish because he was misled by T&B's "grandfathered" statement. See also Unisys III, 242 F.3d at 505. It necessarily follows that the District Court erred in entering summary judgment against T&B on the issue of its liability for breach of fiduciary duty without the required finding of uncontroverted evidence of detrimental reliance.

12

T&B asks that we remand with instructions to enter summary judgment in its favor because there is no competent evidence from which a trier of fact could find detrimental reliance by Mr. Daniels. Finding that there is a material dispute of fact on this issue, we decline to so instruct the District Court.

We believe that a trier of fact, having concluded that T&B's grandfathering statement held a substantial risk of misleading one in Mr. Daniels' position, could infer from this record that he intended for his supplemental insurance to continue and failed to effectuate that intent because the grandfathering statement led him to check "None" on the form and to take no other steps to elect new supplemental coverage under the MetLife plan. Mrs. Daniels' testimony that her husband assured her in January of 1993 that he had coverage amounting to 2.5 times earnings and that the deduction from his pay for supplemental insurance was in order would clearly support the conclusion that he desired to have his supplemental coverage continue and that he believed it was continuing. This could be viewed as consistent with his having checked "None" only if he mistakenly believed that the election form was directed to additional supplemental insurance and that continuing existing coverage required no further action on his part. Since this mistaken belief is precisely the risk that the trier of fact would have previously found inherent in T&B's "grandfathered" statement, a conclusion of a causal connection between the two could naturally follow.

On the other hand, a conclusion of detrimental reliance is not mandated by this record. It would also support an inference that Mr. Daniels, facing a period of unemployment, wanted to reduce the deductions from his pay and checked "None" in order to accomplish that objective.

C. T&B's Knowledge of Confusion

T&B insists that it can have no liability for a breach of fiduciary duty in the absence of evidence of knowledge on its part "that Mr. Daniels was confused when he declined to purchase supplemental life insurance." Appellants' Br. at

13

14. Finding no such evidence, T&B urges us to direct the entry of summary judgment in its favor.

Again, as the above discussion of the elements of Mrs. Daniels' breach of fiduciary duty claim indicates, if an employee proves that an employer, acting as a fiduciary, made an inaccurate statement holding a substantial likelihood of misleading a reasonable employee into making a harmful decision regarding benefits, and that he relied to his detriment on that statement in making such a decision, the employee is entitled to equitable relief. If the statement creates a substantial risk of misleading a reasonable employee, it is foreseeable that an employee will be misled to his detriment. That foreseeability and reasonable reliance by a beneficiary are all that is required. See Unisys III, 242 F.3d at 507–10. In such circumstances, we have never required a showing that the employer had actual knowledge that a particular employee was about to be misled.

As we noted in Unisys III, there are situations in which the employer's knowledge of an employee's knowledge and understanding is important to the liability issue. Most frequent are those situations in which an employer has not affirmatively misled the employee but has failed to provide the employee information which the employer knows the employee needs in order to protect himself from harm. See Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993) (finding a fiduciary duty on the part of an employer to communicate to the beneficiary material facts affecting the interest of the beneficiary which the employer knows the beneficiary does not know and which the beneficiary needs to know for his protection). In such a situation, harm to the beneficiary may not be reasonably foreseeable in the absence of employer knowledge of the employee's knowledge and understanding. See Unisys III, 242 F.3d at 509. Where the fiduciary makes an affirmative statement that creates a substantial likelihood of injury to a reasonable beneficiary, however, any harm occasioned by the detrimental reliance on the affirmative misrepresentation is foreseeable and gives rise to liability.

Contrary to T&B's suggestion, neither International Union, United Automobile, Aerospace & Agricultural Implement

Workers, U.A.W. v. Skinner Engine Company, 188 F.3d 130 (3d Cir. 1999), nor In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation, 57 F.3d 1255 (3d Cir. 1995) [hereinafter Unisys II], holds that knowledge of employee confusion is an element of a breach of fiduciary duty claim like that made by Mrs. Daniels. Those cases, like Bixler, involved situations in which the plan administrator allegedly failed to provide complete and adequate information when it knew that such information was necessary to avoid harm to beneficiaries. The portions of the opinions in those cases to which T&B directs our attention do not involve claims of affirmative misrepresentation. See, e.g., Skinner , 188 F.3d at 150 ("[T]here is no competent evidence which suggests that the company made any affirmative misrepresentations concerning the duration of retiree benefits."); id. at 148, 150 (characterizing the plaintiffs as arguing that the defendant breached its fiduciary duty "by failing to inform them that the CBAs did not provide lifetime welfare benefits" and "by failing to correct the retirees' mistaken belief ") (emphasis added); Unisys II, 57 F.3d at 1265 n.15, 1266 ("[W]e hold that the district court did not err as a matter of law in concluding that the duty to convey complete and accurate information that was material to its employees' circumstance arose from these facts since the trustees had to know that their silence might cause harm.").

IV.

Section 1024(b)(4) of Title 29 provides in relevant part that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the . . . instruments under which the plan is established or operated." T&B insists that the judgment entered by the District Court against it must be reversed because (1) a written request from an attorney purporting to represent a participant or beneficiary does not trigger the duty to respond unless it is accompanied by written authorization from the client; (2) Mrs. Daniels was not a "beneficiary," as that term is used in ERISA; and (3) the amount of the penalty imposed constitutes an abuse of discretion.

15

A. Sufficiency of the Request

As we noted in Bruch v. Firestone Tire and Rubber Co., 828 F.2d 134, 153 (3d Cir. 1987), "ERISA's legislative history makes clear that Congress intended the information-producing provisions to enable claimants to make their own decisions on how best to enforce their rights." We conclude that this objective will be best served by a rule that a representation by an attorney that he is making a request on behalf of a participant or beneficiary triggers the duty to respond under S 1024(b)(4) when the administrator has no reason to question the attorney's authority. In the rare case where the administrator has reason to question that authority, it can respond by requesting further evidence. The objective of the statute would be ill served, however, by permitting administrators to refuse to respond with no indication that authority is even an issue. We believe the facts of this case forcefully compel that conclusion.

T&B has asked that we defer to the interpretation of S 1024(b)(4) that it finds in the Department of Labor's Advisory Opinion Letter 82-021A. That letter addressed a request for documents by a non-attorney third party. In that context, the Department gave the following advice:

> [I]f information is required to be furnished to a participant or beneficiary under section 104(b)(4)[29 U.S.C. S 1024(b)(4)], the information must also be furnished to a third party where the participant or beneficiary has authorized in writing the release of the information to such third party. Absent such authorization, it is the Department's view that a plan is not required by section 104 of ERISA to provide such information to persons who are neither participants nor beneficiaries.

See Bartling v. Fruehauf Corp., 29 F.3d 1062, 1072 (6th Cir. 1994). While we agree with this advice as applied to non-attorney third parties, we believe an attorney's representation regarding the authority conferred upon him or her by the client adds a material factor not present in the situation the Department was addressing. The law has traditionally accepted such representations in the absence

16

of reason to question them,5 and the statutory objective behind S 1024(b)(4) counsels in favor of accepting them here. For this reason, we respectfully disagree with the conclusion reached by the Sixth Circuit Court of Appeals in Bartling. See Moothart v. Bell, 21 F.3d 1499, 1503-04 (10th Cir. 1994) (recognizing an attorney's letter similar in all material respects to that of Mrs. Daniels' attorney as constituting a "request" under the statute and triggering a duty to respond).

## B. "Beneficiary"

Even if a letter from a lawyer on behalf of a beneficiary is sufficient to implicate S 1024(b)(4), the attorney must still write on behalf of either a "participant" or a"beneficiary." Mr. Daniels, not Mrs. Daniels, was the participant; to invoke the protection of S 1024(b)(4), Mrs. Daniels, then, must be a beneficiary.

Section 1002(8) of Title 29 defines an ERISA "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." This requires that we resolve two issues: (1) what constitutes a relevant "benefit"?; and (2) when does an individual making a request for plan documents qualify as "a person . . . who is or may become entitled" to such a benefit?6

---

5. See Graves v. United States Coast Guard , 692 F.2d 71, 74 (9th Cir. 1982) ("The designation `attorney for Leonard Graves' [on an administrative Tort Claims Act claim] is particularly important in view of the body of case law holding that the appearance of an attorney for a party raises a presumption that the attorney has the authority to act on that party's behalf.") See also Anderson v. Flexel, Inc., 47 F.3d 243, 249 (7th Cir. 1995) (recognizing in the context of an attorney's request under S 1024(b)(4) "the existence of the long-standing legal presumption that an attorney has authority to act on behalf of the person he" purports to represent).
6. Mrs. Daniels brought her breach of fiduciary duty claim under 29 U.S.C. S 1132(a)(3) which provides in part that a "civil action may be brought . . . by a participant, beneficiary or fiduciary . . . to obtain . . . appropriate equitable relief . . . to redress . . . violations" of ERISA. T&B does not contend that Mrs. Daniels fails to qualify as a beneficiary under this section, and we thus have no occasion to address the relationship between it and section 1002(8).

17

With regard to the first of these two questions, the specific relief that Mrs. Daniels seeks in the instant case-- damages stemming from T&B's alleged breach of fiduciary duty--does not constitute a "benefit" within the meaning of S 1002(8). The Ninth Circuit Court of Appeals came to this same conclusion in Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir. 1986), in which the court observed: "The . . . plaintiffs do not allege that their vested benefits were improperly computed, rather they allege breach of fiduciary duty or of a duty to disclose information about benefits, thus any recoverable damages would not be benefits from the plan."

Consequently, if we were to assess "beneficiary" status as of the time of the present appeal, Mrs. Daniels would not be a "beneficiary" and, therefore, would not be entitled to lodge a request for plan documents to which T&B would be legally obligated to respond. As of the time of the present appeal, Mrs. Daniels presses only a claim for damages stemming from T&B's alleged breach of fiduciary duty. Any recovery Mrs. Daniels would receive as a consequence of the present cause of action for fiduciary breach would come out of T&B's pocket (i.e., on the theory that T&B made materially misleading statements about the plan), and not out of MetLife's (i.e., on the theory that the plan's provisions entitle Mrs. Daniels to payment pursuant to its terms).

We conclude, however, that ERISA beneficiary status should not be measured as of the time of the present appeal. Instead, the temporal focus of the "beneficiary" inquiry should be the time the request for plan documents was made. An individual who "is . . . entitled" to a plan benefit or who "may become entitled" to such a benefit, as of the time that individual makes the request of the plan administrator, thus constitutes a "beneficiary."

As of the time of her request, Mrs. Daniels had no reason to believe that events would happen in the future which would entitle her to a benefit, i.e., that she would "become entitled" at some future date. The issue for decision is thus narrowed to whether Mrs. Daniels was "entitled" to a plan benefit on September 29, 1994, when her request for documents was made. In order for her to be "entitled," it is

18

not necessary that she establish that she had a meritorious claim; it is sufficient if she demonstrates that she had a "colorable claim that . . . she will prevail in a suit for benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989). We conclude that she had such a claim.

As we have recounted, Mrs. Daniels had been told by her husband shortly before his death that he had life insurance through his employer's plan in the amount of 2.5 times his annual salary. He was in a position to have personal knowledge of this matter and had an interest in accurately advising her regarding it. As of September 29th, Mrs. Daniels knew she had received materially less than 2.5 times Mr. Daniels' salary in insurance proceeds. While her son had been shown the group insurance election form, its significance could not be reliably assessed in isolation. With this knowledge, we conclude that Mrs. Daniels had a colorable claim to additional insurance proceeds and that Congress intended that she have access to the documents necessary to determine whether she had a meritorious claim as well as a colorable one. The concept of a colorable claim necessarily encompasses situations in which the requester has a reasonable basis for believing that he or she has a meritorious claim but is in fact mistaken. If Mrs. Daniels' situation on September 29th were not one of these, we would have difficulty hypothesizing one.

It is true, as T&B stresses, that the letter of Mrs. Daniels' attorney was consistent with her contemplating a breach of fiduciary duty claim.7 We do not believe, however, that one in Mrs. Daniels' position should be held to have made an election of remedies based on the precise wording of a letter seeking access to the information necessary to make an informed decision regarding available remedies. If an administrator has concerns about whether someone

_____

7. One paragraph of the letter reads as follows:

>    We are representing the family on their claims for damages concerning the actions of Thomas & Betts, and its employees, resulting in the denial of life insurance benefit payments on life insurance benefits that were provided to Mr. Daniels prior to his death.

App. at 69.

requesting access lacks a colorable claim, it is free to ask for the facts upon which a claim to a benefit is being made. If, like T&B, it fails to do so, it proceeds at its own risk.

C. The Penalty

Section 1132(c) provides that, in the court's discretion, a plan administrator may be required to pay a beneficiary penalties of up to $100 per day from the date of the administrator's failure "to comply with a request for . . . information . . . by mailing the material requested . . . within 30 days . . . ." The District Court imposed the maximum fine because T&B had refused to respond in any way over a very extended period of time and offered no explanation whatsoever for that refusal. As the Court noted, there was no indication that T&B's refusal was "some sort of administrative mistake," and the Court found it difficult to accept that T&B acted based on the legal arguments advanced here without giving any indication of its position to Mrs. Daniels' attorney. T&B characterizes the District Court's findings in this regard as findings of an absence of bad faith and, on that basis, insists that the maximum fine was an abuse of discretion. While we believe T&B's conduct fell something short of a good faith effort at compliance, it is not necessary for us to so characterize it. Suffice it to say that the reasons identified by the District Court are sufficient to bring its ultimate conclusion well within the scope of its considerable discretion.

We will, however, direct that, on remand, the penalty be reduced by $3,000. The District Court found that T&B withheld plan documents for 291 days, from September 29, 1994, until July 17, 1995. Section 1132(c) directs that the fine commence "from the date of such failure or refusal" to provide the requested documents. Section 1132(c) characterizes the relevant "failure" as the failure to provide the documents within 30 days of the participant's or beneficiary's request. Effectively, there is a 30 day grace period in S 1132(c) before the "failure" to provide the documents begins. Thus, although T&B produced the documents 291 days after Mrs. Daniels' request, this is a "failure" to produce the documents for 261 days. Thus, the maximum penalty would be $26,100, not $29,100. See

20

Bartling v. Freuhauf Corp., 29 F.3d 1062, 1069 (6th Cir. 1994).

V.

Having found that T&B breached its fiduciary duty to Mr. Daniels and that it improperly withheld plan documents from Mrs. Daniels, the District Court awarded Mrs. Daniels attorney's fees pursuant to 29 U.S.C. S 1132(g).8 Because we have concluded that we must reverse the District Court's grant of Mrs. Daniels' motion for summary judgment as to her breach of fiduciary duty claim, we must also vacate the District Court's imposition of attorney's fees. After Mrs. Daniels' breach of fiduciary duty claim is finally resolved, the District Court may, of course, revisit the attorney's fee issue.

VI.

Because genuine issues of material fact exist as to whether T&B's "grandfathered" statement is materially misleading and, if it was, as to whether Mr. Daniels relied on it in making his supplemental insurance election, we will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

8. Section 1132(g) provides as follows: "(1) In any action under this subchapter (other than an action described in paragraph (2) [delinquent contributions]) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."