NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2500
_____

SUSAN STAROPOLI, individually and on behalf of SAM STAROPOLI;
AVA STAROPOLI,

*Appellants*

v.

METROPOLITAN LIFE INSURANCE CO;
JP MORGAN CHASE BANK NA;
JP MORGAN CHASE US BENEFITS EXECUTIVE,

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:19-cv-02850)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on November 7, 2022

Before: JORDAN, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: February 7, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This case arises out of Defendants' failure to pay benefits on a life insurance policy Susan Staropoli took out for her then-husband. The two later divorced, and Mr. Staropoli passed away a few years later. The policy's plain terms do not allow ex-spouses to receive insurance coverage. As such, we will affirm the District Court's rejection of Ms. Staropoli's many claims for relief.

## I.[1]

Appellant Susan Staropoli was an executive at JPMorgan Chase ("JPMorgan"). As part of its employee benefits, JPMorgan offered her a life insurance policy. The policy was issued by MetLife, administered by JP Morgan Chase U.S. Benefits Executive (the "Benefits Executive"), and subject to ERISA, 29 U.S.C. § 1001.

Soon after Ms. Staropoli started working for JPMorgan, as part of its benefits package, she took out insurance on the life of her then-husband, Charles Staropoli, with her children as the beneficiaries. The Staropolis divorced in 2013. At that time, Mr. Staropoli became ineligible for coverage under the policy, which applied only to current (not ex-) spouses. Unaware of this restriction, Ms. Staropoli reenrolled Mr. Staropoli in the policy in the fall of 2015, increasing the benefits from $50,000 to $300,000. She paid more than $2,000 in premiums for that coverage.

---

[1] We write solely for the parties and so only briefly recite the essential facts.

Mr. Staropoli passed away on July 4, 2018. Ms. Staropoli submitted a claim for benefits to MetLife.[2] MetLife denied her claim because Mr. Staropoli was not her spouse and so was not eligible for coverage. Ms. Staropoli pursued an administrative appeal with MetLife, which was rejected for the same reason.

Ms. Staropoli then filed suit in the Eastern District of Pennsylvania. She sued MetLife and JPMorgan, asserting claims under ERISA for the payment of benefits and for breach of fiduciary duty. The District Court dismissed this complaint "for three reasons." *Staropoli v. Metro. Life Ins. Co.*, No. 19-Civ-2850, 2021 WL 2939936, at *1 (E.D. Pa. July 13, 2021). First, the court held that JPMorgan was an improper defendant because the Benefits Executive—not JPMorgan—was responsible for administering the plan. *Staropoli v. Metro. Life Ins. Co.*, 465 F. Supp. 3d 501, 510 (E.D. Pa. 2020). Second, the court dismissed Ms. Staropoli's benefits claim because the "unambiguous language of the plan" made Mr. Staropoli ineligible for benefits. *Id.* at 513. Third, the court concluded that Ms. Staropoli had failed to state a claim against MetLife for breach of fiduciary duties. *Id.* at 515-21.

Ms. Staropoli then filed a second amended complaint. She did not renew her claims against JPMorgan or MetLife. Rather, she asserted a new breach of fiduciary duty claim against the Benefits Executive. The District Court rejected these claims as well, granting summary judgment to the Benefits Executive. *Staropoli*, 2021 WL 2939936, at *8. "[E]ven

---

[2] This claim was submitted on behalf of her children, the supposed beneficiaries of the policy. Ms. Staropoli similarly brought this case on her own behalf and on behalf of her children. Following the District Court's practice, we refer to Ms. Staropoli and her children collectively as "Ms. Staropoli." *See* JA40 n.2.

construing the facts in the light most favorable to Ms. Staropoli," the court found that she failed to show "that the Benefits Executive breached its fiduciary duties, either through omission or misrepresentation." *Id.* This appeal followed.

## II.[3]

Ms. Staropoli challenges many aspects of the District Court's judgment. Finding no error, we will affirm.

Ms. Staropoli appeals the dismissal of her claim for benefits under the plan. ERISA gives her the right to sue for these benefits. *See* 29 U.S.C. § 1132(a)(1)(B). We review the District Court's decision to dismiss this claim de novo. *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). To prevail on this claim, Ms. Staropoli must show that "she has a right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (cleaned up).

The policy at issue delegates to MetLife discretion to construe the terms of the plan and determine eligibility for benefits. We will therefore set aside MetLife's determinations only if they are "arbitrary and capricious" or not "reasonably consistent" with the plan's text. *Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp.*, 871 F.3d 239, 245-46 (3d Cir. 2017); *see also Conkright v. Frommert*, 559 U.S. 506, 521-22 (2010) ("[T]he

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). We have jurisdiction over this appeal from the District Court's final orders under 28 U.S.C. § 1291.

plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" (quoting *Firestone Tire & Rubber Co v. Bruch*, 489 U.S. 101, 111 (1989))).

We have little trouble concluding that MetLife's interpretation of the plan was reasonable.

The parties agree that the plan does not permit coverage for ex-spouses. *See* JA98 ¶¶ 10-11; JA104 ¶ 30, JA108 ¶ 44. So Ms. Staropoli instead focuses her argument on the plan's incontestability clause, which she says precluded MetLife from denying her claim even though Mr. Staropoli was not eligible for coverage. That clause provides in relevant part that MetLife "will not use [Staropoli's] statements which relate to insurability to contest insurance after it has been in force for 2 years." JA3095.

MetLife's decision to deny coverage was not contrary to the plain language of the incontestability clause. MetLife did not use Staropoli's "statements" to deny coverage. Rather, as the complaint itself acknowledges, MetLife relied on public records reflecting Mr. Staropoli's divorce to determine his ineligibility. JA101 ¶ 20. Moreover, the incontestability clause only bars MetLife from using statements "which relate to insurability" to deny claims. JA3095. MetLife interprets the plan as distinguishing between "eligibility" and "insurability." MetLife Br. 20; *Staropoli*, 465 F. Supp. 3d at 513 n.1. It determined that the statements underpinning Ms. Staropoli's claim "concerned eligibility, not insurability, and thus fell outside the scope of the incontestability clause."[4] MetLife Br.

---

[4] The policy's "insurability" requirements relate to "medical" qualifications for receiving insurance. MetLife Br. 20; *see Evidence of Insurability*, *Black's Law Dictionary* 640 (9th ed. 2009) (defining "evidence of insurability" as "[i]nformation – such as medical records or a medical examination – that an insurer may require to establish a potential insured's

5

20. This is a distinction reflected in Delaware law, which governs the plan. *See* 18 Del. Code § 3114 (providing that incontestability clauses do not "preclude the assertion at any time of defenses based upon provisions in the policy which relate to eligibility for coverage"). So we cannot say that it was arbitrary for the insurer to draw the distinction here. Because MetLife's decision to deny coverage was consistent with the plan's language, it was not arbitrary and capricious, and we will affirm.

## III.

### A.

The District Court concluded that MetLife and the Benefits Executive did not breach their fiduciary duties to Ms. Staropoli. We review its grant of summary judgment de novo and will affirm. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

The core of Ms. Staropoli's claim is that Defendants breached their fiduciary duties to her by accepting premiums for insurance that she did not have "even though they consistently told her" the opposite. Staropoli Br. 35. In particular, Ms. Staropoli argues that the Benefits Executive misled her into believing that Mr. Staropoli was covered in two ways: "first, by withdrawing premiums from her paycheck" for Mr. Staropoli's supposed coverage, and "second, by listing Mr. Staropoli as a covered dependent on the company's 'Benefits Web Portal.'" JA52.[5]

---

qualification for a particular insurance policy"). Its "eligibility" requirements relate to "non-medical issues," such as whether an employee works a certain number of hours per week, or whether their dependent is a "lawful spouse." MetLife Br. 24.

[5] Ms. Staropoli advanced a variety of theories before the District Court. It is unclear which she is renewing here. But all fall victim to the same fundamental defect—it was

In order to survive summary judgment on this claim, Staropoli must show that her reliance on these supposed misrepresentations was reasonable. *Shook v. Avaya Inc.*, 625 F.3d 69, 73 (3d Cir. 2010). She cannot. Ms. Staropoli acknowledges that she received many official disclosures which told her that ex-spouses were not eligible dependents. And she agrees that she was required to certify that she was responsible for understanding these rules and following them.

Given these facts, our precedent forecloses Ms. Staropoli's claim. Her reliance on the Benefits Web Portal and her paycheck was "unreasonable as a matter of law" because her interpretation of these sources "cannot be reconciled with the unqualified" plan language. *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 907 (3d Cir. 1995); *see also Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 169 (5th Cir. 2021) ("Our precedent clearly indicates that an employee cannot reasonably rely on informal documents in the face of unambiguous terms in insurance plans."). As such, Defendants were "entitled to judgment as a matter of law" on this claim, and so the District Court was correct to grant them summary judgment. *See* Fed. R. Civ. P.56(a).

B.

In addition to her claims for affirmative misrepresentation, Ms. Staropoli also argues that Defendants breached their fiduciary duties through their omissions. More specifically, she says that Defendants knew that she was mistaken about Mr. Staropoli's coverage and therefore had a duty to correct her misconception. But she provides no basis for overturning

---

not reasonable for her to rely on various informal representations when the plan documents unambiguously said the opposite.

the trial judge's determination that the Benefits Executive lacked actual knowledge of Mr. Staropoli's ineligibility. *See Staropoli*, 2021 WL 2939936, at *6-7. Ms. Staropoli instead directs most of her argument at the court's use of an "actual knowledge" standard, which she regards as "unworkable." Staropoli Br. 48; *see Staropoli*, 2021 WL 2939936, at *4-5. This standard is well-grounded in our precedent, and Ms. Staropoli does not persuade us to deviate from it. *See, e.g.*, *In re Unisys Corp. Retiree Med. Ben. "ERISA" Litig.*, 242 F.3d 497, 509 (3d Cir. 2001); *see also Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 76 (3d Cir. 2001) (distinguishing between affirmative misrepresentation claims, which do not require "actual knowledge" of confusion, and claims for omissions, which do).

## C.

Ms. Staropoli also argues that the Benefits Executive was MetLife's agent, and that as a result the Benefits Executive's supposed knowledge of her divorce is attributable to MetLife. But Ms. Staropoli did not allege facts sufficient to establish an agency relationship, and so the District Court was right to reject her claim.

To support her claim that the Benefits Executive was MetLife's agent, Ms. Staropoli directs us to "the facts as alleged in the First Amended Complaint." Staropoli Br. 28-29. But this complaint does not mention the Benefits Executive.[6] *See* JA96-121. Instead, it alleges that JPMorgan—a separate entity—was MetLife's agent. JA98-100, 104-05. Ms.

---

[6] Ms. Staropoli did allege that "each of the defendants was the agent, representative, co-conspirator, successor-in-interest, assignee or employee of each remaining defendant. . . ." JA97. We "must eliminate" such "conclusory allegations from the complaint," and accordingly decline to consider them. *Sweda v. Univ. of Pa.*, 923 F.3d 320, 330 (3d Cir. 2019).

Staropoli admits as much in her brief, arguing only that her statements about JPMorgan "also apply to" the Benefits Executive. Staropoli Br. 28 n.3. But she cites no support for this theory, and in any case it was not presented to the district court. Ms. Staropoli has waived her arguments on this point and we will not consider them. *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 244 n.9 (3d Cir. 2021).

IV.

Finally, Ms. Staropoli says that the District Court erred by failing to address her "claims for surcharge, waiver, and estoppel." Staropoli Br. 52.

Ms. Staropoli faults the District Court for not addressing her claim for surcharge. *Id.* But she presented no such claim below. Rather, in her pleadings before the District Court, Ms. Staropoli presented surcharge only as a possible remedy, not an independent claim for relief. JA1229, 1234, 1237. She was right to do so—surcharge is a remedy, not a cause of action. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011). Besides, ERISA authorizes the award of equitable relief only "to redress violations" of the ERISA statute or "the terms of the plan." *Amara*, 563 U.S. at 438 (citing 29 U.S.C. § 1132(a)(3)). Without an underlying violation, Ms. Staropoli's claims for equitable relief cannot be maintained.

Unlike surcharge, equitable estoppel is an independent ERISA cause of action. To succeed on such a claim, Ms. Staropoli was required to show that she reasonably relied on some statement made by the Defendants. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994). As discussed previously, *see* Part III, *supra*, Ms. Staropoli's reliance on Defendants' informal statements cannot be reasonable in light of the plan's

9

unambiguous terms, which excluded ex-spouses from coverage. Thus, her equitable estoppel claim must be rejected as well.

Finally, Ms. Staropoli claims that Defendants "waived" their "right to insist on compliance with the requirement that Mr. Staropoli be [Ms.] Staropoli's husband." Staropoli Br. 53. This claim is meritless. "Under Delaware law," which governs the plan, "waiver is the intentional relinquishment of a known right." *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1210 (Del. 2021) (cleaned up). "The standards for proving waiver under Delaware law are quite exacting, and the facts relied upon to prove waiver must be unequivocal." *Id.* at 1211 (cleaned up). Ms. Staropoli points to nothing which establishes an unequivocal, intentional relinquishment of Defendants' right to enforce the plan according to its plain terms.

\*\*\*

We will AFFIRM the judgment of the District Court.